[Crim. No. 2173. Second Appellate District, Division One.—October 6, 1932.]

THE PEOPLE, Respondent, v. EDWARD P. NOLAN, Appellant.

William J. Clark and Nathan M. Dicker for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Buron Fitts, District Attorney, and Frank Stafford, Deputy District Attorney, for Respondent.

HOUSER, J.—From a judgment of conviction of the crime of murder and from an order by which his motion for a new trial was denied, defendant appeals to this court. Appellant complains that the trial court abused its discretion "in denying appellant a reasonable continuance for his attorney to recover from the illness with which he was confined to his room at the time the trial started". In that connection, in substance the facts are that, although on the date when the action was set for trial, by affidavit it appeared that because of his then illness the attorney who represented defendant was unable to be in court, the record also discloses the fact that because of the inability of said attorney to be then present, the commencement of the trial was actually continued for one and one-half days,

at the expiration of which said attorney was present in court, and then and there, without objection on his part to the commencement of the trial, or without requesting any further continuance thereof, announced his readiness to proceed therewith. Nor does the record show that at any time thereafter any request was made, either by defendant personally or by his attorney, that because of the illness of the latter the commencement of the trial be postponed. either for that or for any other reason, or that after the trial had started a continuance thereof be granted. Nor is there any intimation by appellant that because he was forced to go to trial at the time the trial actually was commenced he was in anywise prejudiced in his substantial rights in the premises. It is therefore apparent that, without taking into consideration the rule that in the denial of a motion for a continuance of the time of trial, unless an abuse of discretion on the part of the trial judge is shown to have influenced the ruling, an appellate court will not disturb it, appellant's objection is not well taken. (See *Flynn* v. *Fink,* 60 Cal. App. 670 [213 Pac. 716], where the authorities bearing on the question are cited.)

Appellant contends that the trial court was without jurisdiction to try the action against defendant for the reason that on the day of, and immediately preceding, the commencement of the trial, under the provisions of section 170 of the Code of Civil Procedure, defendant presented to the trial court and filed with the clerk thereof a written statement and supporting affidavits by which he sought to show the bias and prejudice against defendant of the judge who presided at the trial of the action, notwithstanding which the trial court ordered the said statement and affidavits "stricken from the record" of the court.

A portion of section 170 of the Code of Civil Procedure is to the effect that where the disqualification of a judge is made an issue, "the question of the judge's disqualification shall be heard by some other judge". But in the case of *People* v. *Berman,* 117 Cal. App. 334 [4 Pac. (2d) 226], in substance it is ruled that unless as a conclusion of law the written statement and the affidavits presented by the moving party contain allegations of *facts* from which the bias of the trial judge in favor of the opponent of such party, or the prejudice of such judge against

the moving party, reasonably may be deduced, the trial judge is justified in disregarding the statement and affidavits presented in the matter and is authorized to make, and is warranted in making, an order by which such statement and affidavits will be stricken from the record and the files of the court. It therefore becomes of importance that, preliminarily, the question of the sufficiency of the statement and the affidavits which were presented by defendant to the trial court should receive attention. The gist of the reasons assigned by defendant for his conclusion that he would not receive a fair and impartial trial if it were presided over by the judge whose disqualification was sought to be established was that theretofore, in spite of what by defendant was deemed a sufficient showing of relevant facts, the said judge had denied to defendant his request for a postponement of the trial of the action for a period of one week (as to which reference hereinbefore has been had); and in addition thereto, that the manner of such judge toward defendant was harsh and arbitrary; his language, expression and attitude were indicative of extreme and violent dislike; and that on one occasion "said Marshall McComb (the judge) stated from the bench that he was opposed to having cases of this sort continued; that they ought to be tried right away".

Regarding the first "fact" which related to the denial of the motion for a postponement of the trial, as hereinbefore has been indicated, neither in the order itself, nor in any circumstance connected with its rendition, was any inference correctly deducible on which the ultimate fact showing either bias or prejudice on the part of the trial judge could properly or legally be rested. Nor does the second "fact", which dealt solely with generalities and which for its conclusion, as is admitted by appellant, depended at most upon "an inference drawn from conduct", rest upon a more substantial foundation. The only definite and concrete fact relied upon by defendant to establish the bias or the prejudice of the trial judge, to wit, his statement that "he was opposed to having cases of this sort continued; that they ought to be tried right away"—even in the most extraordinary circumstances, could present no more than slight evidence of prejudice against the defendant which might exist in the mind of the trial judge. But

in the circumstances herein portrayed by the record, which include several continuances or postponements of the trial which preceded the remark to which attention has been directed, the foundational fact upon which the conclusion of "bias and prejudice" depended fell far short of presenting a situation which, in accordance with the requirements of the statute, legally demanded that the question of the alleged disqualification of the trial judge "be heard and determined by some other judge". In other words, the "facts" upon which defendant placed reliance for his "inference" that the trial judge was legally prejudiced against him were so feeble and insignificant in their nature and effect as to constitute no sufficient reason for a consideration of the motion, and justified the action of the trial court in striking from the record and files in the action the written statement and the supporting affidavits which defendant theretofore had presented in the matter. It therefore becomes unnecessary to herein consider other possible defects in the proceedings by which the disqualification of the trial judge was sought to be established; or, on the other hand, to discuss and to determine the consequences which might ensue because of the fact that the trial of the action was had before a disqualified judge.

Appellant predicates error upon an order made by the trial court, after the trial of defendant had commenced and had been in progress for several days, by which was denied the motion made by defendant that he be permitted to add a plea of "not guilty by reason of insanity" to the former plea interposed by him of "not guilty".

It appears that on a day which by three days antedated the date set for the commencement of the trial, one of the attorneys who then represented defendant orally requested leave of the trial court to enter "the additional plea of not guilty by reason of insanity". No evidence, or affidavit, or explanation of any kind was then offered. In denying such request, among other things, the judge then presiding made the statement that "the defendant has had ample time during all these months to enter that plea without delaying the trial, which has been delayed once at his request. I will deny it (the motion) with prejudice. Then the question cannot be raised again and waste a lot more time."

It further appears that again, on the day when the trial was commenced, in the absence of any "showing" of facts to support it, the trial court denied a motion presented by defendant that he be permitted to interpose such additional plea. Still later, and at a time which was several days after the trial had commenced, but during the progress thereof, for a third time defendant presented to the court his motion that he be permitted to add to his former plea the plea that he was "not guilty by reason of insanity". The last motion was accompanied by certain supporting affidavits, to which the People answered by counter-affidavits. For the third time the motion was denied.

The several pleas which may be made by a defendant to an indictment or an information respectively returned or filed against him are specified in the language contained in section 1016 of the Penal Code. Following such specification it is then provided that:

"A defendant who does not plead guilty may enter one or more of the other pleas. A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged, provided that the court may for good cause shown allow a change of plea at any time before the commencement of the trial. A defendant who pleads not guilty by reason of insanity, without also pleading not guilty thereby admits the commission of the offense charged."

Relative to a situation such as is here involved, in the case of *People* v. *Northcott,* 209 Cal. 639, 654 [70 A. L. R. 806, 289 Pac. 634], the Supreme Court said:

"Appellant's motion to be permitted to change his plea from 'not guilty' to the plea of 'not guilty by reason of insanity' was based upon several purported affidavits, the substance of which was that two doctors had examined appellant, and reached the conclusion that he was insane when examined by them, and that certain attorneys were present when the doctors made such examination, and heard them say the appellant was insane. Section 1016 of the Penal Code provides that a defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged, 'provided that the court may for good

cause shown allow a change of plea at any time before the commencement of the trial'. We concur in the view of the prosecution that 'good cause' was not shown in the affidavits presented, and that the trial court did not abuse its discretion in refusing to grant appellant's motion.

"When the appellant was arraigned he was represented and apparently well advised by counsel. He was fully informed as to, and aware of, his rights. From the affidavit of his own counsel it appears that he stubbornly resisted any advice and effort to have him enter the additional plea, 'not guilty by reason of insanity'. His sole plea, 'not guilty', was not ignorantly induced, nor was it made through motives of hope or fear unduly operating upon his volition. In such a situation it was not an abuse of discretion for the trial court to refuse to permit the interposition of the additional plea. (*People* v. *Bostic,* 167 Cal. 754 [141 Pac. 380]; *People* v. *Murphy,* 62 Cal. App. 709, 711 [217 Pac. 810].)"

In the instant case, since no attempt was made by defendant on either the first or the second presentation of the motion to show "good cause", it is plain that no error was committed by the trial court in its order by which the requested leave was denied. ██ As to the third of such applications, aside from the sufficient reason for its denial found in the clear indication contained in the language of the statute, that even assuming that "good cause" may appear, the motion must be made "before the commencement of the trial" (which was not done in the instant case)—the ruling in *People* v. *Northcott,* 209 Cal. 639, 654 [70 A. L. R. 806, 289 Pac. 634], to which attention hereinbefore has been directed, is to the effect that the determination of such an application rests within the discretion of the trial court. Since the record herein discloses the situation that the facts which appeared by the several affidavits of the respective parties afforded ample justification for the conclusion reached by the trial court on determination of the motion, it follows that the said court did not abuse its discretion in making the order of which complaint is made.

██ Appellant complains that the trial court erred in sustaining certain objections to questions propounded by counsel for defendant to some of the witnesses introduced

in his behalf, as well as in striking from the evidence certain testimony given by such witnesses. One of such specifications of error is that, although a witness was permitted to testify that defendant *"appeared* irrational", the witness was not permitted to state *as a fact* that defendant was irrational. Another item of complaint is that after the same witness had testified that defendant appeared to have "irrational ideas concerning his fellow-policemen", the witness was not permitted to respond to the so-called question to "tell us about that". In the opinion of this court neither of such specifications of error merits serious consideration. ■ The third of such criticisms of appellant of the action of the trial court relates to an order made by it by which, in the first instance, an answer given by a physician as an expert witness to the effect that he did not "think" defendant was "capable of forming an intent or doing an intentional or purposeful act", was ordered stricken out. Aside from the fact that the question asked of the witness was whether he had an opinion regarding the mental capacity of defendant, and consequently that the answer given was not directly responsive to such question, an examination of the entire testimony given by the witness leads to the conclusion that in substance the fact contained in the answer here under consideration was later repeated by the witness and permitted to remain in the evidence for the consideration of the jury. It therefore becomes apparent that, even assuming original error on the part of the trial court, no substantial injury resulted to defendant by reason thereof. ■ A fourth criticism by appellant along the same line is that after another physician, who also was called as an expert witness, had testified generally to certain ailments theretofore suffered by defendant during a term of years, and in that connection the treatment which the physician had prescribed for defendant, the following situation, which is the concrete subject of appellant's present complaint, appears in the record, to wit:

"Q. Was he under your treatment later that year after that? A. Yes, he was. Q. And what did you treat him for then? A. For nervousness and a cough and some sweating at night. I did not make a diagnosis at that time. Mr. Clark: I think that is all. Mr. Moses: At this time

I move to strike out the testimony as incompetent, not within the issues, not tending to prove or disprove the issues here. The Court: Motion granted.''

Appellant's contention that the intention of the trial court was to order stricken from the record, not the last statement made by the witness, but his entire testimony, cannot be sustained. It is possible, though not probable, that such was the intention of the trial court. But such a course might have constituted error; and error cannot be presumed. It is the duty of the party claiming that error has occurred to show that it actually did occur. Defendant had ample opportunity to make certain just what testimony of the witness was included in the order made by the trial court, but failed in that regard. In reason, he cannot expect this court to ''guess'' that error was committed, when the record does not affirmatively show that such was the case. Besides, the probability that by its order in the premises the trial court had no intention of striking out all the testimony of the witness is more or less evidenced by the fact that, in similar conditions which affected the testimony given by the very next witness who was called to testify in the action, the trial court refused to grant a motion which, had it been granted, would have presented the identical question which appellant now raises.

A series of complaints is registered by appellant which arises from the refusal of the trial court to give to the jury certain instructions which were proposed by defendant. In substance, the first of such instructions was to the effect that the oath taken by the jurors that they would render a true verdict in accordance with the evidence adduced and the law as given to them by the court, ''was not a mere empty formality''; but that both the law and defendant had a right to expect that such oath was taken by each of the jurors ''without any mental reservations whatsoever''.

That such an instruction would have constituted a correct declaration of legal principles may not be properly denied. But with reference thereto the presence of such a condition does not present a situation from which it inevitably must follow that, because the trial court refused to give the instruction to the jury, defendant was deprived of a substantial right in the premises, and which latter condition

must result in a reversal of the judgment. The statutory oath which presumptively was given to the jury contains the essentials of the law which relates to the duty of the jurors. The proposed instruction embodied nothing that was either "new or novel". It contained no idea or thought which was not within the universal knowledge of all persons of ordinary intelligence. In such circumstances no error was committed by the trial court in its order by which the instruction was refused. (*People* v. *Daskam,* 123 Cal. App. 545 [11 Pac. (2d) 670]; *Beers* v. *California State Life Ins. Co.,* 87 Cal. App. 440, 466 [262 Pac. 380].)

 In connection with other instructions which were proposed by defendant to be given to the jury, but which were refused by the trial court, the record discloses the fact that each of the legal principles therein contained was substantially given to the jury by means of other instructions. Hence appellant has no just cause for complaint.

Appellant also presents objections to certain instructions which at the request of the prosecution were given to the jury.

 The first seriously presented attack on such instructions is directed against that portion thereof which relates to drunkenness, or to voluntary intoxication, either as constituting in itself a sufficient defense for the commission of a criminal act, or as furnishing a foundation for the related defense of insanity. In that connection, appellant contends that since the alleged insanity of defendant was not an issue in the action, for the trial court to instruct the jury as it did with reference to the legal effect which might be produced by the voluntary intoxication of defendant as far as his sanity was concerned, was argumentative, and hence damaging to defendant's rights. However, no definitive attempt is made by appellant to point out any "argument" which is contained in the instruction in question. If any argument therein is discernible to appellant, its prejudicial effect on the rights of appellant is not apparent. From time immemorial it has been considered good law, which has been enunciated by countless authorities, that any wavering or departure in a defendant from a normal mental state, which has been immediately induced by his voluntary intoxication, affords

no basis for either justification, excuse or any other so-called "defense" for the commission by him of a criminal act while in such condition. Under the general plea of "not guilty", defendant was permitted to introduce evidence of the consumption by him of .a large quantity of intoxicating liquor, and either as a result thereof, or as induced by some other cause, that defendant was "unbalanced", mentally irresponsible, and consequently incapable of forming an intent at the time when the act of which he was charged was committed. Hence, in that connection it was proper that the jury should be correctly informed regarding the legal responsibility of defendant for his acts, if any, which were committed at a time when as a direct result of an overindulgence by him of intoxicating liquor his "rational or reasoning powers were suspended".

Appellant also complains of certain other instructions or parts of instructions, which, at the request of the prosecution, were given to the jury; not that from a legal standpoint they were fundamentally wrong, but that they dealt with abstract legal principles which were inapplicable to the situation presented by the facts portrayed by the evidence.

Although reviewed singly, literally and without regard to its relation to other unobjectionable instructions, it might be possible to reach a conclusion in harmony with the argument of appellant, when considered in its broader effect, and as inducement to other proper instructions, in nearly every instance the questioned instruction becomes absolved from fault and consequently freed from merited criticism. In order to rightly understand the effect of that which otherwise might appear in some of the instructions as prejudicial to the substantial rights of defendant, it is only necessary to remember that instructions must not be considered singly, but as an entirety; that mere error no longer constitutes sufficient reason for reversal of a judgment; but that the prejudicial effect of an alleged error must be not only apparent, but as well it must be so harmful as to clearly indicate that in its presence the defendant actually, or at least probably, was deprived of the fair and impartial trial, which, by the Constitution and the statutes, is guaranteed to him. So considered, even the fact that in strictness some of the

instructions may not be apposite to the facts adduced in evidence, will not in itself afford a compelling reason for a reversal of the judgment. This court is clearly of the opinion that none of the instructions of which appellant complains constituted such an invasion upon defendant's right that he be given a fair trial on the merits, as for that reason would justify a reversal of the judgment which was rendered against him.

But with reference to the instructions given to the jury at the request of the People, as well as those offered by defendant for the consideration of the jury, and by the court refused, appellant's major attack is directed against the law as laid down by the trial court which related to the implied intent which follows from an attempt to commit the crime of mayhem. It was as follows:

"The court instructs the jury that if a person in the perpetration of, or attempt to perpetrate mayhem, takes the life of a human being, intentionally or unintentionally, it is murder of the first degree."

A summary of the immediate facts in evidence, upon which said instruction was based, is as follows: "Defendant rushed into a room where the deceased and a Mr. Williams were dancing. Defendant was wild eyed; he called Mrs. Duncan (the deceased) a double-crosser and other names; also accused her of kissing Williams, which she denied. Defendant then 'slapped her down and knocked her on the bed'; he then walked over to Williams, and upon Williams' denial that he had kissed the deceased, he knocked Williams to the floor. Williams got up and went into the bathroom, and then the defendant directed his attention to the deceased, who was lying on the bed, and said: 'I have not marked you yet, but I will'; and punched her in the eye, and then 'Mrs. Duncan turned over on her stomach on the bed'. The testimony of the autopsy surgeon discloses the fact that the left ethmoidal sinuses of the deceased were found to contain fat and blood from the left orbital cavity, the wall of which had been burst toward the mid-line; that the blow upon the eye apparently was one of the contributing causes of death, and could have been sufficient of itself to have caused the death of decedent." (Respondent's brief.)

By section 203 of the Penal Code it is provided that mayhem may consist of unlawfully and maliciously putting out an eye; and an attempt, although unsuccessful, to commit such an offense is a felony. (Sec. 664, Pen. Code.) So, specifically, by section 189 of the Penal Code, in effect it is provided that a murder which is committed in the perpetration, or in the attempt to perpetrate mayhem, is of the first degree. It is, therefore, apparent that whether defendant's efforts to "mark" the woman whom he was accused of having attacked actually would have resulted in the loss of the sight of one of her eyes, was not in itself determinative of the correctness of the instruction.

As a witness in his own behalf, defendant denied having had any intention to commit a homicide; but considering the evidence which related to the attack made by defendant upon the woman, it is obvious that it furnished a substantial basis for the implied conclusion reached by the jury that the declaration made to the victim that "I have not marked you yet, but I will", was but expressive of his intention to "put out an eye"; or, in its legal result, to commit the crime of mayhem. And if from the evidence it may be inferred that it was the intention of defendant to "mark" the woman, and that in accordance with the several statutory definitions of mayhem, of "attempt" generally, and of the legal consequence which follows from an attempt to commit mayhem, the attack made by defendant in law constituted an attempt to commit the crime of mayhem; and that although, even as a matter of fact, defendant was unsuccessful in his attempt to commit mayhem, the homicide was the result of such unlawful act; it would seem clear that the several provisions of the Penal Code to which attention has been directed would authorize the giving of the instruction of which appellant complains.

A general statement of the law with reference to the legal effect of a homicide which may result from an attempt to commit a felony has no application in the face of specific language of a positive statute which expressly provides to the contrary of that so generally announced. With reference to the several authorities from other jurisdictions cited by appellant in support of the legal principle for the application of which he here contends, it may be observed that, however well sustained by text-writers or by judicial opinions,

neither theory nor abstract reasoning may prevail as against positive and specific statutory declaration. And so, in view of the provision contained in section 189 of the Penal Code to the effect that a murder which is the result of an attempt to commit mayhem "is murder of the first degree", authorities to the contrary from other jurisdictions in which it does not appear that in reaching such conclusion therein a statutory provision similar to that of this state was taken into consideration, can have no compelling weight.

It is urged by appellant that, because of misconduct of the deputy district attorney in charge of the prosecution of the defendant in the trial of the action, the judgment should be reversed. Such alleged misconduct occurred during the closing argument to the jury and consisted, principally, in two different classes of improper remarks: First and foremost, of expressions of opinion by the deputy district attorney relative to asserted facts rather than to inferences which properly should be drawn from the evidence, and secondly, as to certain criticisms which related to the conduct of the attorney who represented defendant.

As examples which occurred in the first group, it appears that either expressly or by implication, the deputy district attorney expressed his opinion to the jury that the defense interposed by defendant was "outrageous"; that as affected the question of whether defendant had a hallucination regarding the conduct of his wife, the deputy district attorney "thought" that defendant was justified in assuming that something was wrong; that the explanation of why, during the greater part of his lifetime, defendant had been able to successfully walk around "trying to balance a chip on his shoulder", was that he was an ex-prizefighter; that defendant struck the deceased in the same manner that a prizefighter would have struck her; that the deputy district attorney proposed to examine the evidence for the purpose of determining whether defendant had "an honest, genuine defense"; that he did not "think" that the blow on the head which, at the age of six years defendant had received, had "anything to do with the case"; that "a man, who is in the habit of drinking on the job is probably drinking a good deal when he is not on the job also"; that he thought "a great big foot would make more than one impression on the tender skin of a woman"; and with reference to the head-

aches from which defendant appeared to have suffered, that the deputy district attorney would have suffered similarly, if he had been "staying in jail waiting to go to trial on a murder charge".

In the second group may be found either some rather caustic criticisms, or some adverse insinuations, regarding the manner in which the attorney for defendant had conducted the defense. As illustrations of such oral castigations may be noted the remark in effect that, although there were readily available to defendant several medical experts whose testimony "cannot be purchased like a commodity", none of them had been employed; "yet we find him (defendant) putting on a doctor to establish this defense"; also a broad insinuation that if the homicide had not occurred (as it did) in the presence of witnesses, a defense entirely different from that actually interposed by defendant would have been presented; that "Mr. Clark (attorney for defendant) is too familiar with petit mal and grand mal to permit his doctor to try to convince you Mr. Nolan walked around in a petit mal trance five or six hours, and they edged away from that and got into this amnesia"; that the prosecution did not appear in behalf of, nor owed any allegiance to, a private client, but that "we are here to present the facts or evidence to the court and to the jury"; that although immediately preceding the homicide, defendant was under the influence of intoxicating liquor, because he had consumed such liquor in an asserted attempt to alleviate pain that was a necessary incident of the headache from which he was suffering, "it was misconduct for the deputy district attorney to attack defendant's counsel with the statement that we expected to show involuntary intoxication"; and that "it was his (attorney for defendant) obligation to employ all the sophistry that his experience and genius can suggest".

In addition to the foregoing, appellant specifies as misconduct of the deputy district attorney the fact that, in the course of his argument to the jury, he stated: "The defendant has the only appeal in a case of this kind. The People have none. He has been tried here by a jury practically of his own choosing. . . . "

It should "go without saying" that aside from fair argument as to the effect of the evidence, or as to what inferences properly were deducible therefrom, no attorney

should venture a bald opinion, stated as a fact, with reference to an issue or as to the effect, or value, or weight, of the evidence, as it may affect any ultimate fact in the case. That in its purity and strictness, the rule was violated by an officer of the court, whose particular duty demanded that he abstain from any conduct that might even in the slightest degree embarrass the administration of justice, is apparent. It is likewise obvious that from the facts as hereinbefore indicated, the deputy district attorney in charge of the prosecution is not to be commended, but rather to be censured, not only on account of his having in effect endeavored to impress upon the jury his own unsupported opinions—not as related to proper deductions which might be made from the evidence adduced, but as to facts not in evidence—but as well by reason of the gratuitous criticisms and animadversions which were heaped upon a brother practitioner, who, as far as the record discloses, was free from fault. Nor in his statement to the jury that ''the defendant has the only appeal in a case of this kind'', etc., can this court find any justification for the deputy district attorney. It was a suggestion that might have been calculated to place defendant at a disadvantage. The statement embraced the possibility that no matter how great or important the error, or howsoever numerous such errors, which might be committed by the trial court against the prosecution, the People of the state were helpless in that they were without remedy or relief. In ordinary circumstances, such a statement might have created a tendency on the part of the jury to strike a balance, which would effectually operate against defendant and his substantial rights in the premises. At the outset, it should be noted that with reference to none of the occasions to which reference has been had and as to which it is claimed by appellant that the deputy district attorney was guilty of misconduct, did the learned and widely experienced attorney for defendant protest or offer to the trial court the slightest objection relative to such objectionable remarks. It is true, as has been repeatedly ruled, that where it appears that the remark is of such a nature and character that an objection thereto by the aggrieved party, followed by an order of the trial court striking such remark from the record and admonishing the jury to disregard the remark, could not have the effect of removing from the ''mind'' of the jury

the prejudice against the defendant which the remark undoubtedly or most probably created—a failure on the part of the aggrieved party to make timely objection and motion with reference thereto will not deprive him of the right to urge such misconduct as a ground for reversal of the judgment. But to this court, it is not perceivable that such a situation is here presented. An examination of each of the several remarks made by the deputy district attorney to which attention has been directed readily discloses the fact that, in itself, the remark in question was not of that importance, or so far-reaching in its effect, that its influence, if any, might not easily have been destroyed by means of proper objection and motion presented by defendant, followed by appropriate order and instruction to the jury by the trial court. It is conceivable that defendant feared that by making constant objection to what he might characterize as prejudicial remarks made by the deputy district attorney, he might annoy the jury, and thus damage rather than help his defense. But if he chooses to let the objectionable incident pass without remonstrance upon his part, he should not ordinarily be permitted to urge that he has been prejudiced by reason thereof. It is only by considering the several derelictions of the deputy district attorney as a whole that any prejudice to the substantial rights of defendant becomes apparent. But since it is obvious that by timely and appropriate action on his part, defendant might have, and probably would have, prevented the occurrence of many of the several remarks of which he complains, or that failing in that regard the said remarks would have been stricken from the record and the jury would have been instructed to disregard them in arriving at its verdict, and that the damage of which he now complains would thus have been averted, it follows that the present contention by defendant that because of the situation he was not accorded a fair trial, cannot be sustained.

In substance, appellant further contends that the evidence adduced on the trial of the action was insufficient to show premeditation on the part of defendant in the commission of the homicide, and consequently that the verdict of "guilty of murder . . . of the first degree . . . " and the ensuing judgment cannot be sustained. But in view of the implied finding by the jury, which is supported by substan-

tial evidence, to the effect that the homicide was the result of an "attempt to perpetrate mayhem", no evidence was required to establish the fact that the killing was wilful, deliberate and premeditated. (Sec. 189, Pen. Code; *People* v. *Nichol*, 34 Cal. 211; *People* v. *Long*, 39 Cal. 694.)

The judgment and the order by which the motion for a new trial was denied are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 18, 1932.