[Crim. No. 5300.   In Bank.   July 9, 1952.]

THE   PEOPLE,   Respondent,   v.   BERNARD   GILLIAM,
Appellant.

236

Floyd H. Hyde and Alfred Thomas for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Wallace G. Colthurst, Deputy Attorney General, for Respondent.

SHENK, J.—This is an appeal from a judgment imposing the death penalty and from the order denying a motion for a new trial.

On August 30, 1951, the defendant, known as "Red," was in the county jail in Firebaugh because of intoxication. On September 1st he was released to work as a flagman at road construction. He worked during the morning. At noon and during the afternoon he drank some wine and beer. Later he consumed a small amount of food at a café and drank more beer. He testified that a Mexican in the café beckoned him to the rest room where he gave the defendant a marijuana cigarette. After taking one or two puffs he claimed to have "blacked out" and did not remember anything of the events that followed.

Some time between 8 and 8:30 that night the chief of police saw the defendant and said he should be taken into custody. The defendant, 35 years of age and weighing about 212 pounds, was known to cause trouble after consuming intoxicating liquor. He was placed in a jail cell with three men, Leyva, Saccum, and Paul Self, the decedent. When the officers locked the door the defendant went to the aper-

ture and cursed them. He then turned his attention to the men in the cell. He took Leyva's hand saying "You are my friend, huh?" Leyva complained that the defendant was too stout and that his handshake hurt. Defendant shook hands with Saccum who objected for the same reason. He "messed" with Leyva and again with Saccum who remarked that he was ruptured. He pushed them around for a while, twisting one's head, the other's arm, throwing one into a bunk and out again, until Saccum said that he was sick and asked to be let alone. The defendant then noticed Self, who was lying in the lowest bunk, and ordered him to get out. There was no response and the defendant pulled him out with the blankets. Self offered no physical resistance, but calling him "Red" said he had done nothing and not to hit him. The defendant struck him several times so that his head fell against the wall about 18 inches above the floor. The defendant invited him to get up, calling him a name. Saccum told him the man was unconscious and couldn't get up. The defendant suggested that Saccum shut his mouth or he'd get some of it. He again bothered Saccum and Leyva alternately until asked to desist. The defendant then returned to Self and continued kicking him, Saccum repeatedly asking him to stop but being told to "shut up." At some point the defendant picked up Self and dropped him on the floor, the head striking first. At another he kicked Self in the face with his heel, tore the flesh, and displaced an eye. He picked him up, held his feet apart and kicked him in the groin. Finally when gurgling sounds indicated the last of Self, the defendant sat down and ordered Saccum to pull off his shoes which were wet with blood. Saccum complied. These activities occupied considerably more than an hour. At about 10:15 p. m. they heard a car and Saccum stated that he thought the "cops" were coming. The defendant rolled into a bunk telling them to say nothing or they'd get the same treatment. The officers came in and remarked "it looks like we have a dead man here." They handcuffed "Red" who exclaimed that if the man wasn't dead he would finish him off. He was then taken to Fresno county jail where he refused to make a statement, saying that he supposed they would "fry" him but corrected himself to indicate that in California it would be "gas." An autopsy on the decedent revealed that death ensued from shock and hemorrhage caused by multiple fractures to the skull and torso.

On his arraignment the defendant was informed as to his legal rights and requested counsel. Attorneys Floyd H. Hyde and Alfred Thomas were appointed. The defendant pleaded not guilty and not guilty by reason of insanity. Trial was had on each issue and consumed eight trial days. On the issue of not guilty the jury found the defendant guilty of murder in the first degree without recommendation; and on the issue of not guilty by reason of insanity he was found to have been sane at the time the offense was committed.

The defendant moved for a new trial on the statutory grounds or for reduction of the degree of the crime on the ground that the evidence was insufficient to indicate that he had the requisite intent to justify a verdict of first degree murder. The motion was denied.

No contention is made that the verdict of sanity is unsupported by the evidence.

On the issue of guilt the record does not support the contention that the defendant suffered a blackout in the nature of a psychomotor or psychic seizure. Facts concerning his background and the results of laboratory tests were put in evidence. The defendant was born in Arkansas. His mother died when he was 2 years of age and he was raised by grandparents on a farm. He attended school to the sixth grade at age 13, having repeated some grades. His father remarried several times. Accidents indicate two head injuries, one of which occurred while he was in the army. He claims to have suffered a four-day blackout in 1946. He married. He has a history of addiction to alcohol which increased after marital difficulties developed. He joined the Army to get away from them, was sent overseas but was discharged for habitual drunkenness. An electroencephalograph examination and reading, a laboratory test used in the practice of neurology, indicates at most a borderline abnormal, but does not show a major disorder.

The defendant contends that there is no evidence of premeditation or of facts sufficient to show a purpose to torture or to perpetrate mayhem (Pen. Code, § 189), which would justify the verdict of first degree murder. He relies on *People* v. *Tubby*, 34 Cal.2d 72 [207 P.2d 51], to indicate that the elements of torture were not present. He contends that the evidence shows that he was in a psychic seizure or in a fighting mood brought on by an intoxicated condition; that his primary purpose was not to cause suffering,

to put out an eye, or to kill, but only to play or fight with the other men in the cell. He also contends that death did not occur in the perpetration of mayhem because there is no evidence that the victim was alive when he kicked him in the face.

There is sufficient evidence to support the jury's implied finding that the defendant was not suffering from a temporary amnesia or from any condition or disorder which prevented him from having the requisite malice and intent. There was no provocation for his conduct and the circumstances attending the killing showed an abandoned and malignant heart together with a consciousness of guilt which supports the verdict. (*People* v. *Isby,* 30 Cal.2d 879, 890 [186 P.2d 405].) This is further emphasized by testimony that only when the victim stopped breathing did the defendant desist in his efforts and that on his arrest he offered no resistance but admitted his guilt freely. The record supports the jury's implied finding that he was capable of deliberation, intent, and malice. An officer asked him if he realized what had happened. He replied, ''What are you going to do, fry me. . . . Well, you don't scare me in any way . . . that isn't the first time I've killed anybody . . . I am not afraid to die.'' The defendant made statements to several of the officers that if the decedent was not dead he would finish him off. Asked why, he replied that he couldn't stand him any longer, but on being pressed would give no reason, saying ''never mind.'' After he corrected himself as to the method of execution in California, the defendant was asked whether there was any possibility of mistake as to who did the killing. Referring to the blood on his clothes, he asked them to figure it out for themselves.

On the record the jury could justifiably conclude that the defendant had the requisite intent which would support the verdict on any or all of the theories submitted to it. Considering the deliberateness of his acts and statements, the time intervening since his drinking, and the length of time consumed in committing the assault, the jury could infer that the defendant knew what he was doing and that he committed the acts with homicidal intent. The jury could also conclude that responding to an unprovoked sadistic tendency he had the purpose and intent to cause cruel suffering on the part of the decedent, and that among the torturous acts of brutality he maliciously gouged the victim's eye with his heel. The evidence that the defendant did not

desist until his victim stopped breathing supports the conclusion that he was alive when that kick was administered. The justification for the implied findings of the jury, which support the verdict of first degree on any or all of these theories, differentiates the result from that in *People* v. *Tubby, supra* (34 Cal.2d 72), and does not call for the application of that case nor of other cases on which the defendant relies.

■ There is no merit in the contentions of misdirection in the instructions on torture and mayhem. Requested instructions given as modified embodied the elements of intent, purpose and malice. The court on its own motion gave an instruction including the definitions of mayhem and attempted mayhem. That instruction stated that a person was guilty of mayhem even though he had no intention of doing the particular physical injury constituting mayhem which resulted from the attack. The defendant contends that this lack of intent cannot apply to attempted mayhem. (See *People* v. *Nolan,* 126 Cal.App. 623, 637-638 [14 P.2d 880].) No contention is made that as to all other issues the jury was not fully and fairly instructed. Inasmuch as the record clearly supports the jury's implied finding that the defendant maliciously intended the prolonged assault, including the kick which gouged the eye, and that as a result Self is dead, there can be no question of prejudice if error in the respect claimed be assumed.

■ The defendant was granted two postponements for his arraignment. He contends that by the denial of a third request for a continuance he was refused a reasonable delay in order to obtain material from government agencies considered necessary in the preparation of a proper plea. At the time of the request (October 1st) the defendant was permitted to enter the plea of not guilty with a reservation of the right to change his plea to include that of not guilty by reason of insanity and make a request for continuance of the trial if deemed advisable. That course was followed and on October 31 the defendant changed his plea to not guilty and not guilty by reason of insanity. The trial on the plea of not guilty commenced on November 6th and consumed six trial days. The trial on the plea of not guilty by reason of insanity consumed two days. No further request for a continuance was made. There is no merit in the contention that the defendant was not afforded a reasonable time in which to determine the nature of his plea. In effect he was given the time requested for the investigation reasonably

necessary for entry of the additional plea and preparation for trial thereon. His contention that the material sought arrived too late for use on the trial or on the motion for new trial, and that it was not merely cumulative, was argued on the hearing on the appeal. There is no showing that the additional evidentiary matter was other than cumulative or that it would have had a material effect on the verdict or on the outcome of the motion for a new trial. Since also the opportunity to ask for further continuances was preserved no prejudice appears from the refusal to grant the additional delay for arraignment. Nor can it be said that there is any basis for a new trial or for a reduction of the degree of the crime.

The defendant contends that he was denied due process because he was not informed of his rights nor represented by counsel on his preliminary hearing. That contention is not a subject for consideration now. The defendant did not move to set aside the information pursuant to section 995 of the Penal Code. The omissions of which he complains affect the legality of his commitment on the preliminary hearing. By failing to move to set aside the information he has waived the alleged invalidity. (Pen. Code, § 996; *In re Tedford,* 31 Cal.2d 693 [192 P.2d 3].) Unlike the case of *In re James,* 38 Cal.2d 302 [240 P.2d 596], on which reliance is placed, the defendant was ably represented by counsel and was cognizant of his rights on his trial in the superior court. Nothing appears to indicate that he did not have a full and fair trial.

The judgment and the order denying the motion for new trial are affirmed.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

On the authority of *People* v. *Tubby,* 34 Cal.2d 72 [207 P.2d 51], I would modify the judgment by reducing the degree of crime to murder of the second degree and as so modified affirm the judgment.