[Crim. No. 11. Fifth Dist. Dec. 18, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES JONES, Defendant and Appellant.

James Jones, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, James Jones, appeals from convictions of first degree burglary and first degree robbery. ▮ ▮ Count I of the information charged that the defendant and one James Hamilton, Jr., on or about February 16, 1961, did "willfully, unlawfully and feloniously enter the house and building occupied by Joseph Williams, in the City of Tulare, . . . in the night time, with the intent . . . to commit theft . . ."; count II alleged that the two defendants on the same date ". . . did willfully, unlawfully, feloniously and by means of force and fear take from the possession and immediate presence of Joseph Williams . . . ($585) . . . at which time defendants were armed with a dangerous weapon, . . . a straight razor."

On March 10, 1961, appellant first appeared in the superior court, and the Public Defender of Tulare County was then appointed to represent him. The record shows that a copy

of the transcript of the proceedings at the preliminary hearing was handed to him and that he received a true copy of the information. The court continued the matter at defendant's request to March 14, 1961, at which time the defendant entered a plea of not guilty to each of the two charges. On April 18, 19 and 20 the defendants were tried before a jury, which rendered verdicts finding each of them guilty as charged on both counts.

Appellant's motion for a new trial was argued and denied on May 12, 1961; the court also denied probation and sentenced the appellant to state's prison on each of the two counts.

The appellant, having filed a notice of appeal, this court, at his request, appointed Martin Fath as his counsel. On March 8, 1962, appointed counsel filed a report in lieu of a brief on appeal stating that he could find no meritorious basis for the appeal, whereupon he was relieved of his duty by order of this court. The appellant subsequently filed both an opening and a closing brief in his own behalf.

The victim of the crimes, Joseph Williams, lived in a two-room house in the city of Tulare; he testified he had been acquainted with appellant Jones and codefendant Hamilton for about 10 years; during the first part of January 1961, Williams had $585 in a savings account in a Tulare bank; because his mother had died, he withdrew the money about January 27, 1961, for the payment of debts and funeral expenses; he placed it in a white pocket book inserted in a brown pocketbook, and during the day carried it on his person. At night he kept it between the two mattresses on his bed.

About a month before February 16, 1961, the victim had shown the money to acquaintances, Burl McArthur and Robert Wilson; McArthur told codefendant Hamilton about Williams' money. On February 15, 1961, Williams went to bed at about 11:30 p.m. after locking both doors of his home. A little later, the defendants broke into the house through a kitchen window; they tore down the screen, placed a box under the window, crawled through, and after stepping on the stove, reached the floor of the kitchen. Codefendant Hamilton ran into the bedroom and struck the victim on the right side of the head. After grabbing Williams by the left hand and pulling him onto the floor he said, "I came for it," and "give me that money." Hamilton told appellant Jones to turn on the light, which he did. The appellant kicked

the victim and hit him with his fists, striking him several times. Codefendant Hamilton took the money from between the mattresses of victim's bed. The fund amounted to $585, composed of all $20 bills, except for one $5 bill. Williams tried to seize the money from Hamilton, who was holding him with his left hand; the codefendant pulled a straight razor from his pocket and slashed at Williams with it; Williams jumped back, threw up his hands to block the attack and suffered a cut on a finger of his left hand.

Williams testified that appellant told Hamilton, "You got what you come for. Now let's go." The two men went to the kitchen door, unlocked the night latch and went outside. The complaining witness picked up a butcher knife which was lying on a kitchen table and asked them to return the money. Hamilton replied, "I haven't got your money," and said that Williams had better not come outside or tell anyone or he would kill him. As the outside area was dark, the victim was afraid to go to the police station; he had neither a telephone nor a car; he wrapped his finger and went to bed.

The next day at approximately 7 a.m. Williams arose and went to the house of Mrs. Jeltz, his landlady, to call the police. She advised him to go directly to the police station. Williams returned home to get his coat and again started out the door. He met appellant and codefendant Hamilton on his porch as he was leaving. Williams accused them of taking his money; they denied it; Williams went back to Mrs. Jeltz's and then again to his home; Jones and Hamilton returned to Williams' house; appellant was at the edge of the yard about 20 feet away while Hamilton stood on the front porch pointing a shotgun at Williams; he told Williams not to leave the house or report the crime or he would shoot him.

Williams watched the two men for a few minutes to see if they were leaving; he then began walking up the alley behind his house; he saw the appellant, who said, "I didn't take your money. What I was beating on you about last night was my wife." The victim continued to the police station and reported the crime.

Appellant and Hamilton went to the home of the codefendant's mother, where his four sisters, brother and three children also lived; the two stayed there about 15 minutes, then left and later returned at about 8:30 a.m. Appellant gave Mrs. Hamilton the shotgun and two or three shells and told her to keep them.

That evening Mrs. Savannah Stewart, one of Hamilton's

sisters who lived with Mrs. Pearl Hamilton, found $380 in $20 bills in a pocket of an overcoat hanging in the closet.

Testifying in his own defense, appellant claimed that he went with Hamilton to the victim's house at about 7 p.m. on February 15; that the two men and the victim drank and talked and that after awhile Williams offered appellant $2 and then told him to "go get Willadean and I'll give her ten." Willadean Jones was the wife of appellant, from whom he had been separated for several years; appellant stated he thereupon slapped the victim in resentment over the offer. He claimed Williams began to cry, talked about his mother's death and then five or six minutes later came out of the kitchen with a butcher knife, and for several minutes Williams lunged at the two men with a knife and yelled at them before allowing them to leave. Appellant claimed that he was not in the Williams house except at the time of the above incident.

Appellant admitted handing the shotgun and shells to Mrs. Pearl Hamilton on the following morning after taking the gun from Hamilton in front of Williams' house. Hamilton claimed that he had found the $380 early that morning wrapped in a blue bandana-type handkerchief near the victim's home; he further claimed that he had given the money to his mother shortly after finding it. However, his mother and sister testified that it was found by his sister in an overcoat which was hanging in the Hamilton closet.

Appellant's contentions on appeal, although divided into numerous subdivisions, constitute four claims:

(1) That no complaint or preliminary examination in the lower court and no commitment to the superior court took place; that therefore the district attorney filed the information without proper authority;

(2) That the information was defective;

(3) That the evidence does not justify the verdict;

(4) That the public defender, the judge and the district attorney failed to protect the defendant's constitutional rights.

Appellant first alleges that no complaint was filed against him in the lower court and that no preliminary hearing was had prior to the filing of the information. These statements are either made with wilful intent to deceive or through ignorance of patent fact. After reading the briefs of the defendant, this court ordered, pursuant to rule 12(a) of the California Rules of Court,* that the entire file in the case

---

*Formerly Rules on Appeal, rule 12(a).

be sent to us by the clerk of the trial court. The file shows that the criminal complaint in the Justice Court for the Tulare Judicial District, which was subscribed and sworn to by Joseph Williams, the victim, on the 2nd day of March, 1961, before Judge Ward G. Rush, charged James Jones in proper form with burglary. The document bears an endorsement signed by Judge Rush holding the defendant to answer for burglary, fixing bail and ordering him to appear in Department 3 of the superior court on Friday, March 10, 1961, at 9:30 a.m.

There was likewise placed on file in the office of the County Clerk of Tulare County the original warrant of arrest issued by Judge Rush on the 2nd day of March, 1961, together with a certificate of arrest of the defendant and an endorsement of Judge Rush, fixing bail at that time in the sum of $3,150. These official papers were filed in the superior court by the committing magistrate pursuant to the requirements of section 883 of the Penal Code.

Furthermore, as already noted, the minutes of the superior court show that the defendant was handed a transcript of the testimony taken at the preliminary examination at the time of his arraignment. And the attorney appointed to represent defendant in this court, who filed a report that he could find no meritorious point on appeal, further states that the defendant contended ". . . the transcript of the preliminary hearing was not sufficiently used to impeach prosecution's witnesses" at the trial. Thus, there is no foundation in fact for the claim that preliminary examination was not held in due form prior to the filing of the information.

If it be objected that the information is in two counts charging burglary in count I and robbery in count II, it should be recalled that the district attorney had the right to charge in several counts any crime that was shown in the preliminary examination itself. (Pen. Code, § 739.)

But even if the foregoing facts did not exist, the defendant would be in no position to urge this point on appeal, for he did not move to set aside the information.

In *People* v. *Martin,* 128 Cal.App.2d 361, 363 [275 P.2d 635], in an appeal from the judgment on conviction of second degree burglary, the defendant urged that there had been no sworn complaint filed in the lower court and that no preliminary examination had been held. The district attorney said that there had been; the record on appeal was silent. The appellate court said:

"In such a case there is a presumption that the information was regularly issued, hence was preceded by a sworn complaint and a preliminary hearing. Moreover, this is a point which a defendant is precluded from making except by timely motion to set the information aside, as provided in section 996 of the Penal Code. *(In re Razutis,* 35 Cal.2d 532, 534 [219 P.2d 15] and cases there cited.)   It comes too late now."

In *People* v. *Lane,* 144 Cal.App.2d 87 [300 P.2d 321] at page 90, the court considered a similar contention as follows:

"Defendant, in propria persona, first contends that he is entitled to a reversal of the judgment 'because he had no preliminary hearing on the charge for which he was sent to prison.' The record does not bear out this contention and in the absence of proof to the contrary, it must be presumed on appeal that the proceedings in the court below were proper and in accordance with the law and that the court was acting in the lawful exercise of its jurisdiction. Furthermore, there is no indication in the record that the defendant moved to set aside the information as provided in section 996 of the Penal Code. In *People* v. *Greene,* 80 Cal.App.2d 745, 749 [182 P.2d 576], it was held:

" 'Section 995 of the Penal Code provides that the information must be set aside, *upon defendant's motion,* when it appears that before the filing thereof defendant had not been legally committed by a magistrate. Section 996 of the Penal Code provides that if the *motion* to set it aside is not made, the defendant is precluded from afterwards taking the objections mentioned. Since counsel for defendant failed to make such a *motion,* and failed to address himself to the discretion of the court in this respect, he is now foreclosed from raising the objection suggested. (See also *People* v. *Harris,* 219 Cal. 727 [28 P.2d 906], and cases there cited.)' (See also *People* v. *Workman,* 121 Cal.App.2d 533, 535 [263 P.2d 458].)"

In *People* v. *Mullane,* 182 Cal.App.2d 765, 768 [6 Cal.Rptr. 341], the court said:

"Defendant advances a long series of contentions relating to the 'complaint' and to the proceedings before the magistrate which resulted in the filing of the information. There is no record of these proceedings before us, hence, any alleged error therein cannot be considered on appeal. [Citing cases.] Claimed error without record support cannot be con-

sidered by mere suggestion thereof in a brief on appeal. *(People* v. *Justice, supra,* p. 622 [167 Cal.App.2d 616 (334 P.2d 1031)]; *People* v. *Hernandez,* 150 Cal.App.2d 398, 402 [309 P.2d 969].)

"Defendant's contention, unsupported by the record, that he was denied due process because he was not informed of his rights, nor represented by counsel on his preliminary hearing, is not a subject for consideration in this review. And it does not appear that he sought to have the information set aside by reason of any claimed irregularity of his commitment on the preliminary hearing, and in failing so to do, he waived the alleged invalidity. *(People* v. *Gilliam,* 39 Cal.2d 235, 241 [246 P.2d 31]; *People* v. *Emigh, supra,* p. 395 [174 Cal. App.2d 392 (344 P.2d 851)].)"

Appellant's second point—that the information is not sufficient in form is wholly without merit. Count I of the information correctly charges burglary; count II properly charges robbery. The defendant does not point to any particular on which his claim of insufficiency is based. There is no merit to his contention.

With respect to appellant's claim of the insufficiency of the evidence, we conclude from our review of the evidence already set forth herein and the analysis which follows that the jury had ample proof before it upon which to found its verdict of guilty on each of the two charges.

In *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], it was said: " 'We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury."

Section 459 of the Penal Code reads as follows: "Every person who enters any house, room, apartment, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."

The evidence establishes that entry into the victim's home was made through a kitchen window.

Burglarious entry may be inferred from the fact that appellant unlawfully and forcibly entered the home of another; there is no better proof that a burglar entered with

intent to commit theft than a showing that he did commit it. (*People* v. *Owens,* 79 Cal.App.2d 290, 298 [179 P.2d 401]; *People* v. *Kittrelle,* 102 Cal.App.2d 149, 156 [227 P.2d 38].)

In this case, the testimony of the victim alone is sufficient to support the conviction of burglary. Williams, who had known the appellant and the codefendant for several years, testified to their entry and the taking of the money.

Section 460 of the Penal Code reads as follows: "Every burglary of an inhabited dwelling house, . . . or building committed in the nighttime, . . . is burglary of the first degree."

Williams' testimony established that his home was an "inhabited dwelling house" and that the burglary took place "in the nighttime." The evidence is sufficient to support the conviction of burglary of the first degree. (*People* v. *Loggins,* 132 Cal.App.2d 736, 738 [282 P.2d 961].)

Section 211 of the Penal Code reads as follows: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Section 211a of the Penal Code reads as follows: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, . . . is robbery in the first degree. All other kinds of robbery are of the second degree."

The verdict of the jury is supported by the victim's testimony as to the taking of personal property, $585, from his person, by force, and against his will. The testimony of the victim alone is sufficient to sustain a conviction of robbery in the first degree (*People* v. *McNeal,* 123 Cal.App.2d 222, 224 [266 P.2d 529]; Code Civ. Proc., § 1844); it established that Hamilton took the money from between the mattresses of the victim's bed. When the complaining witness tried to grab the money, codefendant Hamilton with one hand held the victim and with the other hand pulled out a white-handled straight razor from his righthand pocket. He slashed at the victim, who jumped back, threw up his hands to block the attack and suffered a cut on a finger of his left hand. During the course of the robbery appellant Jones also kicked and hit Williams. The straight razor as used was a dangerous or deadly weapon. (*People* v. *Copeland,* 157 Cal.App.2d 185, 187 [320 P.2d 531]; *People* v. *Raleigh,* 128 Cal.App. 105, 108 [16 P.2d 752].)

Appellant Jones, by aiding and abetting codefendant Hamilton in the commission of the first degree robbery, is

guilty, even assuming that he personally was unarmed. (*People* v. *Perkins,* 37 Cal.2d 62, 64 [230 P.2d 353] ; *People* v. *Fleming,* 191 Cal.App.2d 163, 169 [12 Cal.Rptr. 530].) The evidence supports the verdict of robbery of the first degree.

It is apparent from the transcript that appellant's counsel effected a thorough and creditable representation of his client; the court and defense counsel and the district attorney were not guilty of any misconduct. The defendant had a fair trial.

We will consider an additional point, one that is not raised by the defendant—the question whether or not he can properly be sentenced for the two crimes, burglary and robbery, or in other words, whether this constituted double punishment contrary to the provisions of section 654 of the Penal Code as construed in numerous recent cases.

In *Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839], the rule is set out as follows: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."

The court said in *In re Dowding,* 188 Cal.App.2d 418, 423 [10 Cal.Rptr. 392] : "Under the rules announced by our Supreme Court . . . [*Neal* v. *State of California,* 55 Cal.2d 11 (9 Cal.Rptr. 607, 357 P.2d 839)] it is evident that petitioner could not be sentenced for both 'robbery and burglary, for while the crime of burglary was complete when petitioner and his codefendants entered the drug store with the intent to rob the druggist [citing authorities], and petitioner might have been convicted of this offense even though he and his confederates had been frustrated . . . still their acts constituted a continuous course of conduct and the object of that course of conduct was the robbery of which petitioner was convicted, and the fact that in prosecuting that course of conduct to completion and the fulfillment of their intent and objective, they also violated section 459 of the Penal Code, does not make petitioner subject to punishment for both the offense of burglary and of robbery, but only for one of them."

The court proceeded to hold that the petitioner therein was lawfully sentenced "but for one felony, that of robbery in the first degree."

In *People* v. *Brown,* 200 Cal.App.2d 111, 118 [19 Cal.Rptr. 36], it is said: ". . . the defendant's contention that the trial

court erred in sentencing him to the state prison for the crime of robbery and the crime of burglary, each arising out of the same transaction, is meritorious. The defendant's action in entering the subject store with intent to rob the proprietor and thereupon completing the act of robbery, constitutes a continuous course of conduct for which only one punishment may be imposed. (*Neal* v. *State*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839] ; *In re Dowding*, 188 Cal.App.2d 418 [10 Cal. Rptr. 392].) Under these circumstances, that part of the judgment imposing sentence for the lesser offense should be stricken, while that part of the judgment imposing a sentence for the greater offense should be sustained. (*People* v. *Chessman*, 52 Cal.2d 467 [341 P.2d 679] ; *People* v. *Logan*, 41 Cal.2d 279, 290-291 [260 P.2d 20] ; *People* v. *Knowles*, 35 Cal.2d 175, 187 [217 P.2d 1].) ''

The facts of the instant case are similar to those in *In re Dowding, supra,* 188 Cal.App.2d 418, and *Downs* v. *State of California,* 202 Cal.App.2d 609, 615 [20 Cal.Rptr. 922]. In the later case the court said : ''Punishment for first degree burglary and first degree robbery is identical. (See Penal Code, §§ 213, 461.) Neither is more serious.''

*People* v. *McFarland,* 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 486, 376 P.2d 449, 457], holds that in circumstances such as appear in the record here ''. . . defendant can be punished for either offense but not for both, . . .'' and that the proper procedure on appeal is to eliminate the effect of the judgment as to one of the offenses ''insofar as the penalty alone is concerned.''

The judgment is reversed insofar as it imposes a sentence for robbery and in all other respects it is affirmed.

Brown, J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 13, 1963.