[Crim. No. 467.   Fifth Dist.   Aug. 5, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY E. R. SMITH, Defendant and Appellant.

Robert T. Matsui, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—Defendant was indicted by a grand jury of the crimes of robbery, murder of the first degree, and attempted robbery. He waived a jury, and the court, after finding him guilty on all three charges, sentenced defendant to life imprisonment on the murder conviction under count one. Sentence on the robbery count was suspended as the crime was committed as part of the same offense charged in count one. Sentence on the third count for the crime of attempted robbery was ordered to run concurrent with the murder sentence.

Defendant presents two points on his appeal, first, that a loaded gun taken from him at the time he was apprehended was obtained as the result of an illegal search and seizure and, second, the trial judge, sitting without a jury, erred in conducting a *voir dire* hearing and determining the inadmissibility of defendant's alleged confession.

Taking up, first, the search and seizure question, defendant contends the loaded gun taken from him during a "pat down" by an officer who stopped him for questioning, was illegally seized and erroneously received in evidence.

In an opinion filed this day, *People* v. *Britton, ante,* p. 711 [70 Cal.Rptr. 586], concerned with a similar question, we treat of the discussion by the United States Supreme Court in its vanguard stop and frisk cases, *Terry* v. *Ohio,* 392

U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], and *Sibron* v. *New York*, 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889]. Without repeating our discussion of the conflicting principles the United States Supreme Court accommodated in formulating the stop and frisk rule, we go directly to the basic guidelines laid down in *Terry*: ''Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'' (P. 1883 [392 U.S. at p. 27, 20 L.Ed.2d at p. 909].)

In light of the foregoing principles, to state the facts of our case is to refute defendant's contention that the ''frisk'' was improper.

Defendant and Lyle Shugars, also known as Jerry King, murdered Milton Sternberg, a pawnbroker, during the course of a robbery at the victim's place of business on November 5, 1966. Several guns were taken from a case in the store.

On November 11, 1966, Joe Aurello was the victim of an armed robbery attempt. Fred Garbarino, an eyewitness, called the police and when they arrived defendant was at the scene under circumstances from which it appeared that he was a witness but not a participant. Both defendant and Garbarino gave Sergeant Benton descriptions of a suspect, which matched the appearance of Shugars.

The following day Sergeant Burt, who was investigating the attempted robbery, received information from other officers that a person who fitted Shugar's description could be located at a certain house. He and Sergeant Dohm went to the address given them, arriving about 6 p.m. The officers observed defendant and Shugars leave the house and walk down the sidewalk. They followed the two men a distance, then Dohm dropped back to cover Burt, who stopped the men,

saying, ''Police officer, may I talk to you a minute,'' as he illuminated his badge with a flashlight. Sergeant Dohm then joined Burt in questioning the two men.

They identified themselves verbally, Shugars stating his name was Jerry King. Defendant produced documents that purported to disclose his identity. Shugars said he had no means of identification with him and asked why he had been stopped. He was told that his appearance matched the description of an armed robbery suspect. Burt asked if he had a gun and Shugars replied, ''Yes,'' pointing to his waistband. Sergeant Burt said, ''Don't touch it, I'll get it,'' and reaching under Shugar's shirt, pulled out a long-barreled revolver. Burt turned to defendant and asked if he had a gun; receiving no reply, he proceeded to pat down defendant. Burt testified, ''The first place I placed my hand on the outside of his coat, I felt a hard object.'' The hard object turned out to be a .22 long-barreled rifle automatic, which Burt removed from defendant's waistband. It is this gun that is alleged to be the product of an illegal search.

The foregoing facts place the ''pat down'' of defendant well within the permissible guidelines enunciated in *Terry*. The officers were investigating a felony that had been committed the day before; they knew the man who attempted the robbery was armed; they had information that Shugars, who matched the description of the robber, was at the address where they located him; defendant was with the suspect, Shugars, from whom the officers removed a loaded gun. In these circumstances it was entirely reasonable for Sergeant Burt to ask defendant if he had a gun and, upon receiving no reply, to run his hands over defendant's outer clothing in a search for weapons. The search was reasonably limited to the goal that justified its inception—the protection of the officer while questioning defendant.

The second point concerns the conduct of a *voir dire* examination to determine the admissibility of a defendant's confession or admission in a nonjury trial. Defendant reminds us that *Jackson* v. *Denno*, 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205] holds that in a jury trial the foundational evidence from which the voluntariness of a confession is determined, must be heard by the court out of the presence of a jury. It is only in the event the trial judge concludes the statement was obtained in compliance with the law relating to the admissibility of incriminating statements that the jury hears the foundational evidence. One reason for

having such preliminary determination made by a judge out of the presence of the jury is that when the confession is inadmissible the jurors never hear of it and cannot be influenced, consciously or subconsciously, by knowledge that the defendant made a statement which they might surmise was an admission of guilt. Another reason is that occasionally evidence damaging to the cause of the defendant, that would not be brought out otherwise, comes in on *voir dire*.

Defendant contends these same considerations require the rationale of *Jackson* v. *Denno, supra,* be extended to cases tried to the court without a jury. It must be conceded that judges are subject to human frailties, but, unlike a juror, a judge is presumed able by training and experience to hear *voir dire* testimony concerning the admissibility of a confession or admission and not be affected in his judgment by either the knowledge that an inadmissible statement was made by the defendant, or by what he hears during the *voir dire.* As a practical matter, it is next to impossible for a judge to try a case and not know when a defendant has made a statement that has been ruled inadmissible, since such a proceeding before another judge would be reflected by the file. Unlike the *Aranda* situation (*People* v. *Aranda,* 63 Cal.2d 518 [47 Cal. Rptr. 353, 407 P.2d 265]) where the judge must hear or read the statement of one defendant to determine whether references to a codefendant can be deleted without prejudice to the declarant or whether he should order separate trials, in the trial of a single defendant the judge does not hear or read a statement of the defendant unless he has first determined that it is admissible.

▮ This is not to say that, where a motion is properly made before trial, a pretrial hearing before another judge is not preferable to a determination by the trial judge; we simply hold that where the point is raised for the first time during trial, or on appeal, reversible error per se does not arise from the fact the trial judge heard the *voir dire* examination and himself determined the admissibility of a statement.

In this case, the trial judge carefully confined the *voir dire* examination to the circumstances under which the statement was given and concluded the statement was inadmissible. He neither read nor heard the statement, so he had no way of knowing whether defendant made a full confession, simply an admission, an inculpatory statement, or a statement designed to be exculpatory but which might become incriminating in

the light of other evidence. The situation is analogous to that before the court in *People* v. *Shepardson,* 251 Cal.App.2d 33, 38 [58 Cal.Rptr. 809], where the case was submitted to the trial judge on the transcript of the preliminary examination which inadvertently included a confession of the defendant, valid at the time of the preliminary hearing but invalid at the time of trial by reason of *Miranda* and kindred cases. (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) The reviewing court held that the trial judge was presumed to be familiar with the holding in *Miranda* and that he did not consider the confession although it was before him. Certainly the instant case is much stronger than *Shepardson,* since defendant's statement was never before the judge.

Defendant, in his pro. per. brief, argues that the mere fact a *Miranda* violation occurred requires a reversal, that is, the fact there was a *Miranda* violation by law enforcement officials per se requires a reversal, whether the statement was received in evidence or not. Apparently he has misread the line of cases beginning with *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], holding that it is the *introduction in evidence* of a confession obtained from a defendant in violation of constitutional guarantees that constitutes prejudicial error per se, requiring reversal regardless of other evidence of guilt. (*People* v. *Fioritto,* 68 Cal.2d 714, 720 [68 Cal.Rptr. 817, 441 P.2d 625].) A contention similar to that made by defendant was rejected by the United States Supreme Court in *United States* v. *Blue,* 384 U.S. 251 [16 L.Ed.2d 510, 86 S.Ct. 1416].

The record reflects that defendant's statement taken in violation of *Miranda* played no part in his conviction. The excluded statement has not been shown to be the source of other evidence admitted in the trial (*Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407] ; *People* v. *Bilderbach,* 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921] ; see 56 Cal.L.Rev., p. 579 ; Pitler, "*The Fruit of the Poisonous Tree*" *Revisited and Shepardized*) ; hence the mere fact that an inadmissible statement was elicited from a defendant, as an isolated fact is immaterial if it plays no part·in his conviction.

There is an error in sentencing, obviously the result of an oversight. The murder of which defendant was convicted occurred during the robbery; thus both were the result of an indivisible course of conduct. The trial judge, recognizing this, suspended sentence on the robbery conviction, but the

suspension order is incomplete. The order is merely that the sentence as to the robbery on count two is suspended "by reason of the fact that the offense was committed in furtherance of the offense charged in count one." There is no provision that the suspension shall become permanent upon completion of the sentence on count one, which is necessary to conform to the rule of *People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449]. (See *People* v. *Gomez,* 252 Cal. App.2d 844, 860 [60 Cal.Rptr. 881].)

Judgment as to count two is modified to read as follows:

"IT IS ORDERED that execution of sentence as to count two is stayed pending determination of any appeal on count one, such stay to become permanent when the sentence on count one is completed."

As thus modified, the judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.