[Crim. No. 4269.   Third Dist.   May 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES MARTIN SHEPARDSON, Defendant and Appellant.

Cullen A. Stinnett, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Frank O. Bell, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—Defendant, represented by counsel, appeared for trial on two felony counts, namely, a violation of section

211 of the Penal Code (robbery), and a violation of section 459 of the Penal Code (burglary). He had entered a plea of not guilty and not guilty by reason of insanity. It was stipulated by the district attorney, the defendant, and his counsel that a trial by jury be waived on the burglary count and that the issue of guilt be determined on the testimony given at the preliminary examination. The robbery count was dismissed. The trial court found defendant guilty of burglary in the first degree. Defendant then waived a jury trial on his plea of not guilty by reason of insanity and the court found him sane at the time of the offense for which he was convicted. He appeals from the judgment of conviction.

It is contended on appeal that the evidence was insufficient to establish defendant's intent to commit any felony.

It was about 6:45 on Saturday evening, May 14, 1966, when Miss Paula Annette Day left her two-bedroom duplex apartment in South Tahoe, California, and started for the Sahara Tahoe Hotel, where she was to perform that evening as a dancer in the hotel show. Before leaving she had assured herself that all of the doors and windows to the apartment were secured.

After the show Paula and two girl friends arrived back at the duplex about 12:45 a.m.

The girls entered the apartment through the front door, and Paula noticed that some pillows had been scattered from the couch in the living room. The three girls continued through the living room and into Paula's bedroom and switched on the light. Paula and her friend Mary walked to the left of the bed, the side away from the closet, while the third girl, Linda, walked along the right side nearest the closet. It was then that Linda exclaimed, ''There's someone in the closet,'' and as she said that defendant jumped out of the closet.

As defendant came out of the closet, Paula noticed that he had a kitchen steak knife in his hand which she recognized as one that she kept in a kitchen drawer. Defendant was holding the knife in the fist of his right hand, the blade protruding over his forefinger, and pointing it in the general direction of all three girls.

The girls asked him what he wanted, and he replied, ''Just be quiet, don't make a sound or I'll kill you,'' and told them to sit down on the bed. The girls sat down, and defendant looked at all of them generally and said, ''Do any of you have any money?'' All of the girls replied that they had none,

whereupon he pointed the knife at Linda and said, "Do you have any money?" She replied, "No, nothing to amount to anything." Defendant then said to Linda, "Is this your purse?" She said that it was. The purse referred to was on the bed near its foot; defendant grabbed it, found some money in it, and put it in his pocket.

The girls again asked defendant what he wanted, and he replied, "Just don't make any noise and you won't get hurt." He grabbed Paula and Mary and, holding the knife at their throats, pushed them into the closet and closed the door. Paula couldn't see what happened then, but from the closet she heard Linda say to defendant several times, "Please don't. Please not this." Then, "You're going to get caught. We have friends coming over here right away and you're going to get caught." Defendant replied over and over again, "I don't care. I don't care."

About two or three minutes after the two girls were pushed into the closet, Paula heard Linda scream, and she threw open the closet door and ran. As the door opened, Paula caught a glimpse of defendant, knife in hand, standing over Linda, who was now sitting on the foot of the bed bending back away from him. Paula ran past them, through the dining room and kitchen to the front door, and as she left the house she started screaming for help and continued to run until she reached the middle of the street. She turned and saw defendant run out the front door, past Mary, who had by then reached the front porch, and down the street.

When the police arrived at the scene, Paula returned to the house, where she now noticed that a window in the bedroom of her roommate had been broken and the window was ajar. Prior to this the window had been closed and the windowpane unbroken. She also noticed that several items had been disturbed. On her bed she found a silk stocking from a drawer in her roommate's bedroom and a long silk tie from a Japanese-style robe which was also from the other bedroom. In addition, when defendant previously jumped from the closet, knife in hand, he had a towel over his shoulder which had come from her roommate's bathroom. The only item actually taken from the apartment was the money (about four dollars) that defendant had taken from Linda's purse and which he had in his pocket when he fled.

About two weeks later, on May 28, 1966, defendant was arrested by Officer Richard A. Williams. After he was taken to the station and booked Officer Williams advised him of his

constitutional rights under *Escobedo* and *Dorado,* and received in response a full confession. Defendant's statements were admitted into evidence at the preliminary hearing on June 3, 1966, but at this trial, where the issue of guilt was submitted on the transcript of the preliminary hearing, and at which the court found him guilty, the court stated it was wholly disregarding the testimony of the officer and defendant's confession.

The evidence is overwhelming to establish defendant's intent to enter the apartment of the victim to commit theft. Section 459 of the Penal Code reads as follows:

"Every person who enters any house, room, apartment . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." Section 460 of the Penal Code reads as follows:

"Every burglary of an inhabited dwelling house . . . or building committed in the nighttime, and every burglary, whether in the daytime or nighttime, committed by a person . . . who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first degree."

The evidence establishes that defendant entered the apartment through a window, armed himself with a deadly weapon, secreted himself in a closet in a bedroom and, as the girls came home at about 12:45 a.m., jumped from the closet, knife in hand. Pointing the knife in the direction of the girls, he threatened them, took money from one girl's purse, and after additional threats fled the apartment.

In *People* v. *Jones,* 211 Cal.App.2d 63, 71-72 [27 Cal.Rptr. 429], the court said:

"Burglarious entry may be inferred from the fact that appellant unlawfully and forcibly entered the home of another; there is no better proof that a burglar entered with intent to commit theft than a showing that he did commit it." (See also *People* v. *Conway,* 207 Cal.App.2d 657, 660 [24 Cal.Rptr. 635].)

Respondent calls to the attention of this court a possible basis for error. After defendant was placed in custody, and during custodial interrogation, he made a full confession of his guilt. Prior to his confession of guilt defendant had been advised of his rights to remain silent, to counsel and to complete telephone calls. He was not informed that he had a right to counsel at state expense if he could not afford to

obtain counsel on his own, nor that any statement he did make could be used as evidence against him.

The confession was made on May 28, 1966. On June 3, 1966, at the preliminary examination of defendant, his confession was admitted in evidence. The trial of defendant before the court without a jury was held on July 25, 1966.

On June 13, 1966, *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], was decided, which date was subsequent to the confession and preliminary examination of defendant but prior to his trial. *Miranda,* among other things, held that where a custodial interrogation was initiated by law enforcement officers after a person has been taken into custody, exculpatory or inculpatory statements stemming therefrom may not be used by the prosecution unless the prosecution demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. To assure a continuous opportunity to exercise the defendant's right of silence, *Miranda* requires that the person be warned that he has a right to remain silent; that any statement he does make may be used as evidence against him; that he has a right during interrogation to the presence of an attorney, either retained or appointed; that if he is without funds counsel will be furnished him; that if the accused indicates in any manner, either prior to or during questioning, that he wants to remain silent the interrogation must cease; and that if he states that he wishes an attorney the interrogation must cease until an attorney is present.

The question to be decided here is whether the defendant is entitled to the benefit of the holding in *Miranda,* and if so, whether the failure to give all of the warnings requires a reversal of defendant's conviction.

The warnings given were adequate under the holding in *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. Defendant's trial having begun after the decision in *Miranda,* he is entitled to its benefits. (See *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

The question is whether the inclusion of defendant's confession in the transcript of the preliminary examination, which by stipulation was submitted to the trial court sitting without a jury for the determination of the issue of guilt, constituted error. The confession was before the trier of fact, but was it considered as evidence in the case?

The trial court minutes set forth the following:

"Court has read and considered the Reporter's Transcript on Preliminary Examination as to Count II.

"Contentions are made by respective counsel.

"Wholly disregarding testimony of the officer and the defendant's confession, Court finds from the evidence adduced, beyond a reasonable doubt, that the defendant is guilty of Burglary as charged in Count II of the Information.

"Court further finds that the crime is Burglary in the First Degree."

The rationale of the cases declaring prejudicial error where an illegally obtained confession is admitted into evidence is set forth in *People* v. *Schader*, 62 Cal.2d 716, 729-730 [44 Cal.Rptr. 193, 401 P.2d 665]:

"In determining the prejudicial effect of the illegally obtained confession at trial we are not concerned with the nature of the error that caused the illegality. The *reason* that the confession should not have been introduced into evidence is no longer material. . . .

". . . It is because of the effect of the confession that the reversal is compelled." (See also *People* v. *Dorado, supra,* 62 Cal.2d 338.)

Section 1044 of the Penal Code provides:

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."

The trial took place 42 days after the decision in *Miranda*. Thus we presume the court was familiar with the holding and conducted the trial in accordance therewith. That the confession was in the transcript to be considered should not be determinative of the issue of whether or not it was admitted into evidence. The court here decided the issue of guilt on other evidence before it. The cases distinguish matters tried before a jury from trial before a judge alone (see *People* v. *Talley*, 65 Cal.2d 830, 841 [56 Cal.Rptr. 492, 423 P.2d 564]; *In re Hernandez*, 64 Cal.2d 850, 851 [51 Cal.Rptr. 915, 415 P.2d 803]; *People* v. *Smylie*, 217 Cal.App.2d 118, 122 [31 Cal.Rptr. 360]), and we do not hesitate to hold that the trial court did not consider the defendant's confession albeit it was before it.

To hold that the inclusion of the confession in the transcript before the court alone constitutes error, in the absence of its consideration of the court's decision, would be contrary

to the objectives sought in the development of the exclusionary rules of evidence.

Most exclusionary rules of evidence were developed for jury trials, and reversible error in admission of improper evidence is based on its probable prejudicial effect on the jury. (See 3 Witkin, Cal. Procedure (1954) Appeal, § 99 et seq., p. 2267; Witkin, Cal. Criminal Procedure (1963) Reversible Error, § 739 et seq., p. 710; Witkin, Cal. Evidence (2d ed. 1966) Introduction, § 17, pp. 19-20;[1] see also 79 Harv.L.Rev. 407.)

In the case before us the guilt of defendant was apparent from competent evidence in the transcript. In fact, this evidence was sufficient to sustain a conviction of robbery in the first degree, which had been charged but later dismissed.

We find no derogation of defendant's constitutional rights and the judgment of conviction is affirmed.

Pierce, P. J., and Friedman, J., concurred.

---

[1] Witkin, Cal. Evidence (2d ed. 1966) Introduction, § 17, pp. 19-20.

"Two contrasting views have found support in state and federal decisions:

"(1) That it may be presumed on appeal that the judge disregarded inadmissible evidence in reaching his decision; hence that reversal will not be ordered if there is other competent evidence to support it. [Citations.]

"(2) That the rules apply to nonjury trials in the same way that they do in jury trials; i.e., that admissibility and reversible error are determined in the same manner. [Citations.]

"A variation of the first position is the requirement that the judge expressly indicate his awareness of the impropriety of the evidence and his rejection of it. [Citation.] Another suggestion is that the appellate court presume that the judge properly appraised the evidence and was not unduly influenced by the improper matter. [Citation.]

"In civil cases a number of California decisions follow the presumption that the trial judge considered and relied only on competent evidence in making his findings and rendering the judgment. The effect is to require a strong showing that the error did influence the result in order to obtain a reversal despite other sufficient evidence. [Citations.]

"In criminal cases, particularly where constitutional rights are allegedly violated, the United States Supreme Court appears to treat jury and nonjury trials alike in holding the error reversible despite adequate competent evidence of guilt. [Citations.] But two recent California decisions apply the distinction to the erroneous admission of incriminating statements of a codefendant in a joint trial, contrary to the *Aranda* rule (*infra*, § 479). In both the court explains the theory of the *Aranda* rule as the inability of lay jurors to segregate the evidence and sees no reason why the rule should govern a trial by a judge. [Citations.]"