Commonwealth *v.* Goodman, Appellant.

Argued September 14, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Stephen A. Teller* and *Alan J. Davis,* with them *Wolf, Block, Schorr and Solis-Cohen,* for appellants.

*Jerry B. Chariton,* Assistant District Attorney, with him *Charles D. Lemmond, Jr.,* First Assistant District Attorney, and *Blythe H. Evans, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 30, 1972:
Judgments of sentence affirmed.

———

DISSENTING OPINION BY SPAULDING, J.:
I respectfully dissent.

David Goodman and his brother, Lee, appeal from their convictions on March 25, 1969, for unlawfully possessing marijuana. They were tried jointly without a jury before Judge Donald O'MALLEY, specially presiding in the Court of Common Pleas of Luzerne County. Each was sentenced to 2-5 years imprisonment. This was the first offense for each of the appellants.

Among several allegations of error, appellants contend that the trial judge erred in interpreting Section

(c) of The Drug, Device and Cosmetic Act, 1961, September 26, P. L. 1664, §20; 1963, August 24, P. L. 1147, §§1, 2, 35 P.S. §780.20,[1] under which both appellants were sentenced, as requiring a mandatory sentence of 2-5 years for first offenders. Although the statutory language may be interpreted to require such sentencing, this reading appears to be negated by the holding of our Supreme Court in *Commonwealth v. Glover*, 397 Pa. 543, 156 A. 2d 114 (1950), that the proper construction of The Drug Act of 1957, P. L. 1013, §1, 35 P.S. §865 (Repealed Sept. 26, 1961), which, as to sentencing, read exactly like the statute in the instant case except for the amount of the fine and the length of sentence, was: ". . . that the maximum sentence shall be for a period of not less than five years nor more than ten years, the precise maximum between those limitations being in the discretion of the court. The precise minimum sentence is also in the discretion of the sentencing judge subject only to the requirement that it shall not exceed more than one-half the maximum sentence. . . ." I must assume that by using precisely the same language as used in the prior statute, the Legislature intended that the statute in the instant case be read consonant with the *Glover* opinion.

From the record, it appears that the court did not consider the holding in *Glover*. At a hearing on recon-

---

[1] "(c) Any person who possesses any narcotic drug in violation of the provisions of this act shall be guilty of a felony, and upon conviction thereof, shall be sentenced, as follows: For a first offense, to pay a fine not exceeding two thousand dollars ($2,000) and undergo imprisonment for separate or solitary confinement at labor of not less than two (2) years and not exceeding five (5) years; . . .

"(e) In the case of a conviction for a violation of the provisions of this act relating to possession or sale of narcotics, the court shall have power to suspend the imposition or execution of sentence and grant probation or parole only if the violation was a first offense."

sideration of sentence, while defense counsel was attempting to indicate the harshness of the mandatory 2-5 sentence, the judge interrupted, stating: "First of all, let me say this, we judges dislike mandatory sentences, no question about that, but since the Legislature has seen fit to give us no cut and dried alternative there's not much we can do about it. . . ." Further, it is apparent that neither defense counsel nor the prosecutor was aware of the construction required by *Glover*.[2] Even though the sentences imposed are within the limitations of the statute, I believe the obvious misapprehension by the trial judge of his scope of discretion requires that this case be remanded for resentencing. If the United States Supreme Court finds it appropriate to remand a case for reconsideration of sentence where the trial judge might have imposed a different sentence had he known that two prior convictions had been obtained by unconstitutional means, we can do no less here, where the misunderstanding concerns the very basis of the sentencing power. See *U. S. v. Tucker*, 404 U.S. 443, 92 S. Ct. 589 (1972).

Further, I am of the opinion that the resentencing should be done by a judge who has not been privy to statements elicited at a pretrial suppression hearing which were highly prejudicial to appellants. The failure of the trial judge to disqualify himself from hearing the case on the merits after having heard testimony at the suppression hearing which characterized appellants as regular traffickers in narcotics was cited by appellants in their appeal brief as a ground for new trial.

---

[2] During the hearing on reconsideration of sentence, defense counsel stated: "If your Honor please, there are three alternatives that you have, to impose the sentence again of two to five years in the penitentiary, to defer sentence [in anticipation of the passage of new legislation providing for more lenient sentencing] or again in the words of the statute, in connection with the execution of sentence, to grant probation."

I agree with the Commonwealth that appellant's failure to raise this allegation of error in either their Motion for New Trial and Arrest of Judgment or their Additional Reasons for New Trial, submitted after the filing of the notes of testimony by leave of the court, precludes appellants from raising this issue on appeal. *Commonwealth v. Scoleri,* 432 Pa. 571, 248 A. 2d 295 (1968); see *Commonwealth v. James,* 440 Pa. 205, 269 A. 2d 898 (1970). Although the better method would have been to assign another judge to hear the case on the merits, I do not believe that failure to do so constituted such fundamental error as would allow us to consider this issue, it not having been properly preserved. See *Commonwealth v. Williams,* 432 Pa. 557, 248 A. 2d 301 (1968); *Commonwealth v. Yahnert,* 216 Pa. Superior Ct. 159, 264 A. 2d 180 (1970). Nevertheless, for many of the same reasons that convince me that a different judge should have been assigned to hear the trial evidence, I feel that a meaningful resentencing can only be accomplished in the absence of the prejudicial influence of the pretrial testimony.

Courts on occasion have questioned the generally accepted notion that, due to his legal training and experience, a trial judge is uniquely capable of disassociating incompetent testimony he has heard from his adjudications and judgments. In *Kovacs v. Szentes,* 130 Conn. 229, 33 A. 2d 124 (1943), the Supreme Court of Connecticut said: "A judge has not such control over his mental faculties that he can definitely determine whether or not inadmissible evidence he has heard will affect his mind in making his decision." (at 232.)

In the same vein, cases following *Jackson v. Denno,* 378 U.S. 368, 84 S. Ct. 1774 (1964), indicate judicial concern that considerations of guilt or innocence could infect the determination of the question of voluntariness of the confusion in the mind of a judge as well as in the

minds of jurors. The Courts held in *Owens*[3] and *Hutcherson*[4] that in the interest of the reliability of the voluntariness determination, a separate hearing was required even where a case was being heard without a jury, and in that hearing the judge was to make no inquiry into the truth of the confession. In his dissent in *Commonwealth ex rel. Owens v. Cavell*, 207 Pa. Superior Ct. 167, 215 A. 2d 260 (1965), Judge HOFFMAN stated: "I believe that when a judge is sitting as fact-finder, the proper administration of criminal justice would require that the defendant be permitted to testify fully with respect to the confession before a second judge and still be assured that the trial judge has not been influenced by that testimony." When the U. S. District Court granted Owen's request for habeas corpus relief (254 F. Supp. 154), it did not reach the issue alluded to by Judge HOFFMAN, but did state "this Court does question whether a judge sitting as fact-finder would be able to pass on guilt or innocence without being influenced by evidence relating to the voluntariness issue." In *U. S. ex rel. Spears v. Rundle*, 268 F. Supp. 691, 696 (1967), Judge LORD said: "The only method consistent with Jackson and Hutcherson which the court could have adopted during Spears' trial was, upon learning that he placed the confession in issue, to order a separate hearing to be held by another judge unfamiliar with the case and testimony."

Finally, this Court in *Commonwealth v. Rivers*, 218 Pa. Superior Ct. 184, 279 A. 2d 766 (1971), reversed a conviction where a judge sitting without a jury heard evidence that the defendant was awaiting trial on a homicide charge and where the defendant was questioned about prior convictions for an assortment of

---

[3] *U. S. ex rel. Owens v. Cavell*, 254 F. Supp. 154 (M.D. Pa. 1966).

[4] *Hutcherson v. U. S.*, 351 F. 2d 748 (D.C. Cir. 1965).

felonies and misdemeanors. Judge JACOBS, writing for the majority, stated, "The testimony as to prior crimes and the pending murder charge was so prejudicial that the trier of facts, even though he was an able and experienced trial judge, could have come to no other conclusion than that the appellant had a predilection for crime."

The obvious import of the authorities cited is that in some instances due process requires that we not assume that a judge can relegate incompetent and damaging evidence to the inactive recesses of his consciousness. I believe that the instant case presents an example of the situation where we should not rely upon the fiction of a judicial blind side. The pretrial hearing, at which both appellants testified, adduced several statements which implicated the Goodman brothers in illegal activity much more serious than that with which they had been charged. Even the trial judge indicated some reservation as to his ability to disregard the pretrial testimony upon consideration of the case on the merits. At page 83 of the notes of testimony of the suppression hearing, Judge O'MALLEY *stated*: "I have had a philosophical question about it myself, as to whether or not it shouldn't be some other judge, particularly where the Defendant takes the stand himself, because if the judge is the fact-finder, this does raise a problem. See, if you have a jury here that's going to hear it, there's no problem for the judge, but where the Defendant does take the stand [himself], and I would point this out to Judge BROMINSKI [the President Judge], that the Defendants both took the stand in their own behalf—I won't say I have forgotten their testimony. . . . I didn't think they had hurt themselves, really. Nevertheless, they had taken the stand . . . it isn't the probability that they're hurt; it's the possibility that they could be. This is what we've got to watch."

I do not conclude that there should be a wholesale application of the rules of evidence as they apply to jury trials to judges sitting as the fact-finder. To do so would deprecate a judge's long years of study and experience, and his dedication to the ends of justice and fairness. However, to assume qualities of restraint and logic in a judge which we do not assume in a layman does not mean that we should overlook that judges are subject to human nature, or that we should not continuously seek to assure fairness in cases where judges act as the fact-finder.

I believe the possibility of harm was manifest enough to warrant having a different judge hear the merits. Having been deprived of that safeguard, I think the Goodman brothers are entitled to whatever impartiality might be gained by providing a judge unfamiliar with the suppression hearing upon resentencing.

One additional factor must be considered. It is still the law that a judge may rely upon evidence outside the record, including evidence of criminal conduct for which there have been no charges or convictions, to make his determination of sentence. *Williams v. New York,* 337 U.S. 241, 69 S. Ct. 1079 (1949); see also *Commonwealth v. Bell,* 417 Pa. 291, 208 A. 2d 465 (1965), U.S. *cert. denied* in 384 U.S. 966. Therefore it would be illogical to argue that a judge should not be influenced by evidence of other crimes heard in a suppression hearing if he could rely upon unsworn statements in a presentence report which alleged the same kind of activity. The opinion of the 9th Circuit Court of Appeals in *U. S. v. Weston,* 448 F. 2d 626 (9th Cir. 1971), deals with the problem of standards of fairness for the use of such evidence. In that case, defendant, Jane Weston, was convicted by a jury of receiving, concealing, and facilitating the transportation of heroin. After the verdict was brought in, the trial judge indi-

cated that he thought the minimum mandatory sentence of five years was appropriate. The government requested that the court defer sentencing until a presentence report could be submitted. The report disclosed that information received from Federal Narcotics agents indicated that Weston was the major heroin supplier in the western Washington state area; that she made frequent trips to Mexico or Arizona for acquisition of drugs, and that she netted approximately $80,000.00 every two weeks from her drug operation. The report also indicated Weston's refusal to cooperate with the officers making the report, and that she had been involved in nine cases of loitering and shoplifting in various cities. At the sentencing hearing, Weston vehemently denied involvement in drug trafficking and demanded that the government produce substantive evidence of its allegations. The court imposed the maximum sentence of twenty years. He also directed the government to submit to him in camera factual material substantiating the conclusions contained in the report. In vacating the sentence and remanding for resentencing, the Circuit Court said: "A number of courts, including this court, have frequently cited Williams [v. New York] for the general proposition that evidence of other criminal conduct not resulting in a conviction may be considered in imposing sentence. . . . We would not repudiate this rule if we could. We do not desire to transform the sentencing process into a second trial, and we believe that other criminal conduct may properly be considered, even though the defendant was never charged with it or convicted of it. Its relevance to the problem before the judge, 'what sort of person is this defendant, and what sort of sentence should she receive?' is apparent. But that does not solve our present problem. Here, the other criminal conduct charged was very serious, and the factual basis

for believing the charge was almost nil. It rested upon only two things: the opinion of unidentified personnel in the Bureau of Narcotics and Dangerous Drugs, and the unsworn statement of one agent that an informer had given him some information lending partial support to the charge." The court's response to the suggestion that Weston could have done several things to refute the charges made against her was: "This will not do. It is tantamount to saying that once a defendant has been convicted of offense A, narcotics agents can say to the probation officer, and the probation officer can say to the judge, 'We think that she is guilty of much more serious offense B, although all we have to go on is an informer's report', and the judge can then say to the defendant, 'You say it isn't so: prove that to me.' In addition to the difficulty of 'proving a negative', we think it is a great miscarriage of justice to expect Weston or her attorney to assume the burden of proving to the court that she is not the large scale dealer that the anonymous informant says that she is." The court concluded, "The conviction is valid, but the sentence must be vacated. On resentencing, the District Court may not rely upon the information contained in the presentence report unless it is amplified by information such as to be persuasive of the validity of the charge there made."

In the instant case, the allegation of drug trafficking was certainly a serious one. The evidence supporting this allegation was the statement of an unidentified informant that the Goodman brothers were traffickers, and the sworn testimony of a state policeman that on one occasion he had purchased LSD from Lee Goodman. The same officer testified that he had made another purchase at the apartment which Lee Goodman shared with other persons and had been present when four other purchases were made; Lee Goodman was not

present on these occasions. Both appellants denied involvement in drug trafficking. Lee Goodman testified that at the time that he allegedly sold some LSD to the undercover officer, he was actually attending a class at Wilkes College. David Goodman did not live in the same apartment as his brother, but kept a separate apartment a mile away. If these factors are analyzed by the *Weston* standard, I think there is insufficient corroboration to permit a sentence to be influenced by these allegations. Although a judge could rely upon the policeman's sworn statement that he had purchased drugs from Lee Goodman, this alone would not substantiate the widespread involvement alleged. As to David, there was nothing to link him to the drug trade except the accusations of an unidentified informant. The prejudicial impact on the defendant is the same whether the judge learns of the allegations through a legitimate attempt to establish probable cause for a search warrant, or whether he learns of them through a nefarious attempt of narcotics agents to use a presentence report to have a defendant punished for activity for which she has not been charged or convicted. I would go one step further than the *Weston* court and require that another judge perform the resentencing in order to assure that appellants are insulated from the prejudicial influence of the trafficking allegation.[5]

I would vacate the existing sentences and remand to the court below for resentencing consonant with this opinion.

HOFFMAN, J., joins in this dissenting opinion.

---

[5] For purposes of resentencing I would disqualify not only the trial judge, but also any other judge who had knowledge of the prejudicial matter elicited at the suppression hearing.