347 A.2d 682
**COMMONWEALTH of Pennsylvania**
v.
**Kenneth L. GREEN, Appellant.**

Supreme Court of Pennsylvania.

Argued April 18, 1974.

Decided Nov. 26, 1975.

Kenneth L. Green, I. P. P., R. B. Mozenter, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., Wm. P. Boland, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Kenneth L. Green, the appellant, was adjudged guilty in a non-jury trial of murder in the second degree and of

carrying a firearm on a public street. Motions for a new trial and in arrest of judgment were denied and appellant was sentenced to a term of one to ten years imprisonment for murder; sentence on the firearms violation was suspended. This direct appeal from the judgment of sentence imposed on the murder conviction followed.

Two principal issues are presented by appellant. Finding no merit in either of them, we will affirm the judgment of sentence.

## I.

First, it is argued that the trial judge, sitting as fact-finder, abused his discretion in passing both on the voluntariness of appellant's confession and on his guilt. The salient facts can be quickly stated: Prior to trial, the appellant moved for the suppression of a confession he made to the police on the grounds that it was involuntary and that it had been obtained during a period of unnecessary delay between arrest and arraignment. *See* Pa.R.Crim.P. 130, 19 P.S. (1975 Pamphlet). The suppression court denied the motion, concluding that the confession had been validly obtained and was therefore admissible at trial. The issue of the voluntariness of the confession was again raised at trial, as permitted by Rule 323(j) of our Rules of Criminal Procedure. The trial judge (a different judge than the one who conducted the suppression hearing) found the confession to be involuntary and stated on the record that he did not consider it in making his determination of guilt.

The principal thrust of appellant's claim appears to be that when the question of the voluntariness of a confession is placed in issue at trial, the judge who passes upon that issue, if he resolves it in favor of the defendant, cannot also determine guilt because the knowledge of the contents of the confession could unconscious-

ly color the judge's thinking in the guilt-determining process. In effect appellant is arguing that the mere exposure to prejudicial evidence is enough to nullify a judge's verdict in a case. We cannot subscribe to such a view, for it is of the essence of the judicial function to hear or view proffered evidence, whether testimonial or in exhibit form, and to decide whether or not it should be admitted into evidence, or if admitted initially or provisionally, should later be excluded or disregarded.[1] For us to accept appellant's contention would be, in effect, to find disqualification of a judge to be a judge; it would go against the time honored practice in our courts in a myriad of situations, civil as well as criminal, and would add immeasurably to the workload of the trial courts.

The rights of a defendant in this area are, in our opinion, adequately protected by Rule 323 of the Pennsylvania Rules of Criminal Procedure, 19 P.S. (1975 Pamphlet), relating to the suppression of evidence. That rule is modelled after the so-called Massachusetts or "humane" rule approved by the Supreme Court of the United States in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct.

1. Professor McCormick in his treatise on evidence speaks of the "wisdom of the practice adopted by many experienced trial judges in nonjury cases of provisionally admitting all evidence which is objected to if he thinks its admissibility is debatable, with the announcement that all questions of admissibility will be reserved until the evidence is all in." McCormick, Evidence, § 60 at 138 (Cleary ed. 1972) (footnote omitted). It is the author's view that those who take the position that a judge cannot exclude inadmissible evidence from his mind do so "misguidely". *Id.* at n. 87. See also *People v. Shepardson*, 251 Cal.App.2d 33, 58 Cal.Rptr. 809 (1967), in which the California Court of Appeals held that the mere fact that a confession which was obtained in violation of *Miranda* was received as part of the trial record did not constitute error when the trial court, acting as factfinder, stated that he disregarded the confession in determining guilt. To hold otherwise, the court said, "would be contrary to the objectives sought in the development of the exclusionary rules of evidence" which are "based on [the] probable *prejudicial effect on the jury*" of improper evidence. 251 Cal.App.2d at 38–39, 58 Cal.Rptr. at 813 (emphasis added). *See generally*, Note, Improper Evidence in Nonjury Trials: Basis for Reversal?, 79 Harv.L.Rev. 407 (1965).

1774, 12 L.Ed.2d 908 (1964). It provides that prior to trial, upon motion of the defendant to suppress evidence allegedly obtained unconstitutionally, a hearing shall be held to determine the admissibility of the challenged evidence. If the evidence is found to be admissible, the defendant is foreclosed only from challenging its admissibility at trial; he may still contest the validity of such evidence notwithstanding its admission. For example, in the case of a confession, the challenge to it on involuntariness grounds may be renewed at trial. See *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), *cert. denied*, 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972); *Commonwealth v. Joyner*, 441 Pa. 242, 272 A.2d 454 (1971). As detailed above, the present appellant availed himself fully of the rights accorded by this rule.

Appellant contends that *Jackson v. Denno, supra,* lends support for his claim. In *Jackson,* the Court held unconstitutional as violative of due process a procedure in the State of New York which permitted the issue of the voluntariness of a confession to be submitted to the same jury which also determined guilt. The Court's holding, however, rested upon the fact that there was no independent evidentiary hearing on the issue of voluntariness alone; the vice in the procedure was in exposing the jury to a questionable confession and permitting the jury to assess conflicting evidence on the question of voluntariness in the first instance at trial. In the present case, in contrast, appellant did have an opportunity to contest the admissibility of the confession at a separate hearing preceding trial and before a judge other than the trial judge.[2] The rule appellant seeks to have us adopt would

2. We are thus not faced with a situation where the same judge in the first instance determined both voluntariness and guilt. Where that is the case, i. e., where there has been no preliminary determination of voluntariness, at least two courts have held the procedure to be improper under *Jackson. U. S. ex rel. Spears v. Rundle*, 268 F.Supp. 691, 695–96 (E.D.Pa.1967); *U. S. ex rel. Owens v. Cavell*, 254 F.Supp. 154, 155 (M.D.Pa.1966). See also *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973) (dictum

seem to require that there be *two* suppression hearings rather than just one; the trial judge would have to abort the trial if, as here, he concluded that the confession was not voluntary. We cannot think that such a result was contemplated by the Supreme Court in *Jackson v. Denno*. On the contrary, as noted above, that Court explicitly approved the procedure herein followed when a jury was the factfinder:

> "We raise no question here concerning the Massachusetts procedure. . . . Given the integrity of the preliminary proceedings before the judge, the Massachusetts procedure does not, in our opinion, pose hazards to the rights of a defendant. . . . The judge's consideration of voluntariness is carried out separate and aside from issues of the reliability of the confession and the guilt or innocence of the accused and without regard to the fact the issue may again be raised before the jury if decided against the defendant. The record will show the judge's conclusions in

that a judge who presides at a pre-trial suppression hearing and hears prejudicial testimony which would be inadmissible at trial should honor a request that, as trial judge, he recuse himself). But see *Commonwealth v. Corbin*, 447 Pa. 463, 291 A.2d 307 (1972) (any objection to suppression judge serving also as trial judge was waived, or, in light of the facts of that case, was harmless error). In the view of at least one commentator, the Supreme Court in *Jackson* intimated that it was entirely "permissible for the same judge to determine both voluntariness and guilt." Developments in the Law, Confessions, 79 Harv.L.Rev. 935, 1069 n. 60 (1966). This conclusion is based upon what the Court said in footnote 19 in *Jackson*:

> "Whether the trial judge, another judge, or another jury, but not the convicting jury, fully resolves the issue of voluntariness is not a matter of concern here. To this extent we agree with *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953) that the States are free to allocate functions between judge and jury as they see fit." 378 U.S. at 391 n. 19, 84 S.Ct. at 1778, 12 L.Ed.2d at 924 n. 19.

Another commentator has interpreted this language to mean that due process is satisfied by the so-called "orthodox" or Wigmore rule in "which the judge himself solely and finally determines the voluntariness of the confession." Annotation, Admissibility of pretrial confession in criminal case—Supreme Court cases, 12 L. Ed.2d 1340, § 9 at 1348.

this regard and his findings upon the underlying facts may be express or ascertainable from the record.

"Once the confession is properly found to be voluntary by the [suppression] judge, *reconsideration of this issue by the jury does not, of course, improperly affect the jury's determination of the credibility or probativeness of the confession or its ultimate determination of guilt or innocence."* (Emphasis added). 378 U.S. at 378, 84 S.Ct. at 1781, 12 L.Ed.2d at 916.[3]

If a jury's determination of guilt or innocence is not warped by its reconsideration of the voluntariness finding, it would make no sense whatever to hold that a judge is unable to disregard an involuntary statement in making his determination of guilt.[4]

## II.

Appellant's other principal contention is that once his confession was eliminated from consideration, the evi-

---

**3.** See also *Hutcherson v. United States,* 122 U.S.App.D.C. 51, 351 F.2d 748, 755 (1965): "But once the court has ruled that the confession is voluntary *Jackson v. Denno,* (citation omitted) authorizes jury reconsideration of and disagreement with such ruling, notwithstanding there might be evidence before the jury not limited to the issue of voluntariness, for one decision in favor of voluntariness will already have been made, free of all evidence except that which bears upon that issue."

**4.** In a related argument, appellant asserts that the confession should have been suppressed on the ground that it was allegedly the product of an unnecessary delay between the time of his arrest and arraignment in violation of the rule set forth in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). We may not, however, consider the merits of this contention, for it became moot when the trial court concluded that the confession was involuntary and not to be considered in the determination of guilt. There is thus no ruling adverse to the appellant as to the validity of the confession from which the appellant can appeal; to consider the suppression court's ruling of admissibility as still viable, as the appellant would have us do, would be to ignore the subsequent developments at trial. Furthermore, it does not appear from the record that the issue of unnecessary delay was raised on post-trial motions and for that reason alone it is not properly before us. *Commonwealth v. Agie,* 449 Pa. 187, 296 A. 2d 741 (1972).

dence which remained was insufficient to enable the court to find him guilty of murder in the second degree. Specifically, appellant argues that the element of malice was not proved beyond a reasonable doubt.

██ ██ Our scope of review in considering claims regarding the sufficiency of the evidence is well known: " 'the test of sufficiency of evidence is whether accepting as true all the evidence, together with all reasonable inferences therefrom upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.' " *Commonwealth v. Carbonetto*, 455 Pa. 93, 95, 314 A.2d 304, 305 (1974). See also *Commonwealth v. Long*, 460 Pa. 461, 333 A.2d 865 (1975); *Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d 910 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972). Furthermore, it is clear that we are to review that evidence in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Rife*, 454 Pa. 506, 509, 312 A.2d 406 (1973); *Commonwealth v. Rankin*, 441 Pa. 401, 404, 272 A.2d 886 (1971). So viewed, we are satisfied that the evidence was sufficient to support a finding of malice and the verdict of murder in the second degree.

The charges in this case grew out of an incident in Philadelphia's Cobbs Creek Park in the summer of 1971, during which Stephen Warrington, a 15 year old youth, was killed by a companion of Green's. The court en banc, in dismissing the claim of insufficiency on post-verdict motions, relied principally upon the testimony of one Edward Smith, who had previously pleaded guilty to voluntary manslaughter for his part in the killing. Smith testified that on June 14, 1971, he and several friends decided to go to Cobbs Creek Park to "[s]hoot a white boy." They proceeded first to Green's home and persuaded him to accompany them. One of the youths, Andre Britt, was carrying a .22 caliber rifle in a bag. Upon arrival at the park, Britt removed the rifle from

the bag, loaded it and accidentally discharged it into the ground. On the hill on the opposite side of Cobbs Creek a group of white boys formed. The two groups exchanged rocks and racial epithets. After the accidental discharge, Green handed another bullet to Britt, who reloaded the rifle and attempted, unsuccessfully, to fire it. Green and Smith in turn tried and failed to discharge the gun, which Smith then returned to Britt, loaded with still another bullet. Britt then aimed and fired in the direction of the boys on the hill, hitting and killing Stephen Warrington.

In *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A.2d 195 (1970), we reiterated the oft-repeated rule that "[l]egal malice exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. It may be found from the attending circumstances." *Id.* at 61, 270 A.2d at 197. See also *Commonwealth v. Stewart*, 461 Pa. 274, 336 A.2d 282 (1975); *Commonwealth v. Durant*, 456 Pa. 416, 418, 319 A.2d 675, 676 (1974); *Commonwealth v. Bolish*, 381 Pa. 500, 113 A.2d 464 (1955); *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868). The evidence summarized above was sufficient to establish malice, as so defined, on the part of the appellant. Green actively participated in the events leading up to the shooting and his knowledge and approval of Britt's intentions clearly could be inferred by the fact-finder beyond a reasonable doubt.

Judgment of sentence affirmed.

MANDERINO, J., filed a dissenting opinion in which ROBERTS, J., joins.

MANDERINO, Justice (dissenting).

I dissent because the majority opinion completely misses the point of appellant's argument. Prior to trial, ap-

pellant moved to suppress a confession made to the police, and all evidence obtained as a result, contending that the confession was involuntary. He *also* contended that the confession violated Rule 130 of Pennsylvania Rules of Criminal Procedure in that it was the product of an unnecessary delay between arrest and arraignment. Relief was denied and the confession was introduced into evidence at appellant's trial by the prosecution.

Appellant, a fifteen year old boy, was arrested on June 16, 1971, at about 1:50 p.m. The police had information that the appellant participated in an incident several days earlier during which another fifteen year old boy was fatally shot by a friend of the appellant.

The appellant was not arraigned until sometime during the morning of the day after his arrest. The delay between arrest and arraignment was a period of at least seventeen hours. During the afternoon and evening of the day of his arrest, and the early morning hours of the following day, the appellant was confined almost continuously in a small interrogation room sitting on a steel chair riveted to the floor. During periods in which he was left alone, he was at all times handcuffed to the chair. He was given no opportunity to sleep, but he was fed and permitted to use the bathroom. Appellant was intermittently interrogated and left alone. During appellant's custody, seven different policemen participated at one time or another in the interrogation. After the appellant had been in custody for about twelve hours, during which time he made no inculpatory statements, the police decided to contact the appellant's mother for the first time for the purpose of asking her to give permission for her son to take a lie detector test.

Appellant's mother was then brought to the Police Administration Building. She was not informed at that time about her son's constitutional rights, but was told that her son was involved in a homicide. Appellant's mother was permitted to see her son at about 2:45 a.m.

At the beginning of this meeting, one of the interrogating officers told the appellant to tell his mother what happened. Appellant's mother visited with the appellant for a short period. Thereafter, the appellant's mother, upon the request of the police, signed a waiver form giving permission for a lie detector test to be given to her son. The appellant did not sign any waiver. The record is silent as to whether he refused to do so or was not asked. Following the lie detector test, another interrogation session began during which the appellant confessed to participation in the homicide. During this interrogation session, appellant's mother was present. At one point, the appellant stated that he didn't want to say anything more, but continued after his mother told him to finish the statement. The appellant signed the statement.

Under the above circumstances, which involved about a fifteen hour delay prior to the appellant's confession, the confession was the product of an unnecessary delay between arrest and arraignment and should have been suppressed prior to trial. Rule 130 of the Pennsylvania Rules of Criminal Procedure; *Commonwealth v. Cullison*, 461 Pa. 301, 336 A.2d 296 (1975); *Commonwealth v. Barilak*, 460 Pa. 449, 333 A.2d 859 (1975); *Commonwealth v. Sanders*, 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Johnson*, 458 Pa. 425, 327 A.2d 618 (1974); *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton*, 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972); *see Geiger Appeal*, 454 Pa. 51, 309 A.2d 559

(1973); *Commonwealth v. Peters*, 453 Pa. 615, 306 A.2d 901 (1903).

Even though the confession should have been sup-- pressed *prior* to trial and thus should not have been introduced into evidence, the majority opinion holds that reversal is not required because the trial judge, sitting without a jury, specifically stated that he disregarded the prejudicial evidence—the appellant's confession—and determined guilt solely on the basis of the other evidence in the case. The majority concludes, therefore, that the issue concerning the admissibility of the appellant's confession is moot. I cannot agree.

I have no doubt that the trial judge honestly expressed his opinion in stating that the verdict was not influenced by the prejudicial confession. I cannot, however, accept that opinion, honest though it may be, as determinative of the issue. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 84 S.Ct. 1774 (1964), considered whether a conviction should be allowed to stand on the assumption that a confession had been erroneously introduced into evidence but disregarded by a jury in determining guilt. *Jackson* said that allowing the conviction to stand was:

". . . unacceptable . . . [t]he fact of a defendant's confession is solidly implanted in the jury's mind for it has not only heard the confession, but it has been instructed to consider and judge its voluntariness and is in a position to assess whether it is true or false. If it finds the confession involuntary, does the jury—indeed, can it—then disregard the confession in accordance with its instructions? If there are lingering doubts about the sufficiency of the other evidence, does the jury *unconsciously* lay them to rest by resort to the confession? Will uncertainty about the sufficiency of the other evidence to prove guilt beyond a reasonable doubt actually result in acquittal

when the jury knows the defendant has given a truthful [*though inadmissible*] confession?

It is difficult, if not impossible, to prove that a confession which a jury has found to be involuntary has nevertheless influenced the verdict . . ."

*Id.* at 388, 84 S.Ct. at 1786, 12 L.Ed.3d at 922.

(emphasis added)

The view expressed in *Jackson* is a realistic recognition that the persuasive factors influencing the decision maker are subtle and incapable of detection. An erroneously admitted confession presents a grave danger that the decision maker unknowingly has not disregarded the confession.

*Jackson* was of course, addressing itself to whether a jury may have been influenced by evidence which it may have disregarded. This case is different in that a judge alone sat as the trier of fact. I recognize that in non-jury trials the erroneous introduction of evidence does not always affect the validity of the verdict, but the prejudicial effect of a confession is great, and a judge may, as *Jackson* pointed out about a jury, "unconsciously" lay to rest lingering doubts about the sufficiency of the other evidence by resort to the confession.

Addressing the related question of the influence evidence of guilt might have on a judge's ability to rule impartially on the issue of voluntariness of an incriminating statement, the court in *United States ex rel. Spears v. Rundle*, 268 F.Supp. 691 (E.D.Pa.1967), aff'd. 405 F. 2d 1037 (3d Cir. 1969) (per curiam), concluded that "[i]t is impossible to objectively and reliably determine that the confession was voluntary after considering [the defendant's] guilt." *Id.* at 696. The *Spears* court reasoned that *Jackson v. Denno* required a separate hearing

on the voluntariness issue where the fact finder is a judge rather than a jury, saying,

> "The function of a judge trying a case without a jury is twofold: [the judge] is a finder of fact, as well as an arbiter of the law. The responsibility is burdensome. But the task becomes too great when we require a judge who has heard evidence of guilt, to objectively and coldly assess a distinct issue as to the voluntariness of the confession. *Objectivity cannot be guaranteed, and reliability must be questioned. Jackson* properly construed, prohibits the finder of fact from passing on the voluntariness of a confession since its decision as to voluntariness could be colored by evidence as to guilt." (Emphasis added.)
> *Id.* at 695.

*See also Commonwealth v. Patterson,* 432 Pa. 76, 247 A.2d 218 (1968) (Concurring and Dissenting Opinion by Mr. Justice O'Brien quoting the above), and Levin and Cohen, *The Exclusionary Rules in Nonjury Criminal Cases,* 119 U.Pa.L.Rev. 905 (May 1971). The reasoning of *Spears* is, of course, equally applicable to the situation presented by the instant appeal.

It has been recognized in other situations that certain erroneously admitted evidence may present as much potential for unfairness whether a judge or a jury sits as the trier of fact. *Commonwealth v. Rivers,* 218 Pa.Super. 184, 279 A.2d 766 (1971), reversed a conviction saying that the trial testimony about the defendant's prior crimes and a pending murder charge was so prejudicial that the trial judge (sitting as trier of facts) "even though he was an able and experienced trial judge, could have come to no other conclusion than that the appellant had a predilection for crime." *Id.* at 187, 279 A.2d at 768. In *Commonwealth v. Lockart,* 227 Pa.Super. 503, 322 A.2d 707 (1974), the Superior Court noted its opinion that the improper introduction of photographic evi-

dence indicating a prior criminal record which would be reversable error in a jury trial would likewise be reversable error in a non-jury trial. *See Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972).

The opinion of Judge Spaulding dissenting in *Commonwealth v. Goodman,* 221 Pa.Super. 73, 79, 289 A.2d 186, 189 (1972), pointed out that "we should not rely upon the fiction of a judicial blind side." He continued saying:

> "I do not conclude that there should be a wholesale application of the rules of evidence as they apply to jury trials to judges sitting as the fact-finder. To do so would deprecate a judge's long years of study and experience, and his dedication to the ends of justice and fairness. However, to assume qualities of restraint and logic in a judge which we do not assume in a layman does not mean that we should overlook that judges are subject to human nature, or that we should not continuously seek to assure fairness in cases where judges act as the fact-finder."

*Id.* at 80, 289 A.2d at 189. *See also Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 652 (1973).

The trial judge was exposed to highly prejudicial evidence—a confession—which was improperly admitted at trial. In light of this exposure, I conclude that the trial judge, despite sincere effort to put such evidence out of mind, cannot be said to have done so. The confession is inadmissible because it was secured in violation of Rule 130 of the Pennsylvania Rules of Criminal Procedure and the cases of this Court interpreting that Rule. The appellant is entitled to a determination of guilt or innocence by a fact-finder insulated from, and unaffected by, the inadmissible confession.

The majority also holds that appellant cannot raise the issue before this Court because it was not raised in post-verdict motions. The opinion denying post-verdict motions specifically stated that the admissibility of appel-

lant's statements was *properly* determined in the pretrial suppression hearing. Although the record does not contain a transcript of the hearing on post-verdict motions, the trial court's opinion indicates that the issue was raised and considered.

Judgment of sentence should be reversed and a new trial granted. I therefore dissent.

ROBERTS, J., joins in this dissenting opinion.